## WILLIAMS v. UNITED STATES.

### No. 1671.

District Court, N. D. Illinois, E. D.

May 2, 1941.

Charles O. Rundall and Horace A. Young, both of Chicago, Ill., and Samuel T. Ansell and I. B. Kirkland, Jr., both of Washington, D. C., for plaintiff.

J. Albert Woll, U. S. Dist. Atty., of Chicago, Ill., and Carl J. Marold, Asst. U. S. Atty. Gen., of Washington, D. C., for defendant.

WOODWARD, District Judge.

The Court finds the facts herein as follows:

1. Plaintiff, Griff Williams, is 32 years of age and a resident of the City of Chicago, County of Cook and State of Illinois; and defendant, United States of America, is a corporation sovereign and body politic.

2. This action arises under the Internal Revenue Laws of the United States and is a suit for the recovery of $536.04 social security taxes assessed against and collected from the plaintiff for the year 1938, under Section 804, Title VIII of the Social Security Act of 1935, as amended, 42 U.S. C.A. § 1004.

3. On or about April 28, 1938, the plaintiff filed an Employer's Tax Return required under Title VIII of the Social Security Act for the first quarter of the year 1938 with the Collector of Internal Revenue in Chicago. This return reflected a tax of $187.16 imposed upon employers and employees by Title VIII of the Social Security Act of 1935, which amount the plaintiff paid to the Collector on that date. One-half thereof, viz., $93.58, represented the employer's tax imposed by Section 804 of said Act. No returns were filed by the plaintiff for the remaining three quarters of the year 1938. In May, 1939, under authority of Section 3612(a) of the Internal Revenue Code, 26 U.S.C.A. the Collector of Internal Revenue at Nashville, Tennessee, prepared and filed in the name of the plaintiff the Employer's Tax Returns for the remaining three quarters of the year 1938. These returns reflected a tax for this period arising under Title VIII of the Social Security Act which together with penalties and interest amounted to $884.92. This amount was assessed by the Commissioner of Internal Revenue and was paid by the plaintiff to the Collector of Internal Revenue at Chicago on February 3, 1940. One-half of said sum, viz., $442.46, represented the employer's tax imposed by Section 804 of said Act. On the same day the plaintiff filed with the Collector of Internal Revenue at Chicago a claim for refund of $536.04, representing such employer's taxes, penalties and interest, so paid, together with interest thereon. This claim for refund was rejected by the Commissioner of Internal Revenue by registered letter dated April 15, 1940, whereupon this suit was commenced.

4. Plaintiff is, and has been since 1930, a member of San Francisco Local No. 6 of the American Federation of Musicians (hereinafter referred to as the "Federation"), a labor union affiliated with the American Federation of Labor.

5. While an undergraduate at Stanford University, plaintiff assembled a campus orchestra, fulfilling engagements for compensation in an effort to earn funds with which to continue his college education. Plaintiff interrupted his university career to fill an engagement as a piano player with an orchestra led by Anson Weeks at the Mark Hopkins Hotel in San Francisco, California. That engagement lasted about thirteen months, after which plaintiff returned to the University and obtained his degree. After being graduated in 1932, plaintiff was re-engaged to play as a pianist under the leadership of Anson Weeks, which association continued about two and a half months. Thereafter plaintiff assembled an orchestra of ten musicians, including himself, to perform music at the Edgewater Beach Cafe at San Francisco, California, which engagement continued for about nine months. Upon the termination of that engagement, plaintiff, with one Jimmy Walsh, in the year 1934, assembled an orchestra to perform music at the Mark Hopkins Hotel in San Francisco, California, which organization was known as "Jimmy Walsh and Griff Williams and Their Orchestra." That engagement lasted ten or eleven months, at which time Mr. Walsh withdrew and the orchestra became known as "Griff Williams and his Hotel Mark Hopkins Orchestra." Since 1935, plaintiff and the orchestra of which plaintiff was the leader, has been known and booked as "Griff Williams and His Orchestra."

Plaintiff has been earning his livelihood as a pianist ever since he became a member of the Federation. During the year 1938 he was the leader of a dance orchestra known as "Griff Williams and His Orchestra." During said year the orchestra of which plaintiff was the leader, which consisted of from twelve to fourteen men, played at various places, ranging from the Western Coast of the United States to as far East as Chicago, Illinois. The places at which the orchestra played were twenty-two in number, consisting of

hotels, restaurants, night clubs, ballrooms, amusement parks, clubs, colleges and civic organizations.

The performances given by this orchestra consisted of playing popular music. Besides acting as leader, the plaintiff participated as a musician in the orchestra. As leader, plaintiff fixed the time for rehearsals other than rehearsals for floor shows or other talent.

All engagements for one week or longer were known as "steady engagements," and those for less than one week were known as "single engagements."

6. All engagements during the year 1938, excepting one, were performed pursuant to written contracts, of which the following are typical:[1]

The exception hereinabove referred to was in the form of a letter, but not materially different from the contracts for steady engagements, being Plaintiff's Exhibit Number 16.

7. The Music Corporation of America is a booking agency duly licensed by the American Federation of Musicians. In 1934, plaintiff entered into an agreement with the Music Corporation of America making said corporation his agent for the purpose of booking engagements for his and the orchestra of which he was the leader. All of the engagements of the plaintiff and of the orchestra of which plaintiff was the leader during the year 1938 were booked by the Music Corporation of America. The consideration received

---

[1] Music Corporation of America

No. 3294 CO
MBL:DOW 2-2-38

representing

Griff Williams and His Orchestra

The undersigned employer engages the attraction above named upon the following terms: Starting March 19 or 26, 1938 (opening to be determined later) to and including Friday, June 17, 1938, subject to four weeks' notice of cancellation.

Place—Edgewater Beach Hotel.

City and State—Chicago, Illinois.

Number of artists or musicians—Fourteen (14).

Hours and Special Instructions:

(Employer Must Fill In Exact Hours Attraction Will Perform)

Hours:

Monday through Thursday 8:00 PM to 12:00 M
Friday 8:00 PM to 1:00 AM
Saturday 8:00 PM to 2:30 AM
No Sundays

*The wording "Management Music Corporation of America" must appear on all announcements and advertisements wherever the name of the attraction is used.*

Terms—$1375.00 weekly.

To be paid.................................................................................

It is agreed that all the laws, rules and regulations of the American Federation of Musicians are a part of this contract. Employer agrees to pay the difference, if any, between the compensation herein provided and a sum equal to five (5%) per cent over the Federation scale in effect. Terms of resale of attraction by Employer must comply with regulations and prices of the Federation Local wherein attraction is to perform. In signing this contract, the Employer acknowledges his (her or their) authority to do so, and also hereby assumes liability for the amount stated herein. Agreement of attraction to perform is subject to detention by sickness, accident, or accident to means of transportation used by attraction, or by any act or regulation of any public authority, civil tumult, strike, epidemic, serious interruption of transportation services or any legitimate or unavoidable cause, strikes, Acts of God, and conditions beyond control of such attraction or representative. There are no exceptions to this contract unless stipulated in writing. No deductions are to be made for any reason whatsoever.

Music Corporation of America acts only as agent and assumes no liability for the payment of the excise tax levied on employers under the Social Security Act of the United States, in connection with the services rendered pursuant hereto by the Attraction.

Name of firm—Edgewater Beach Hotel.

Street address—5349 Sheridan Road.

City and State—Chicago, Illinois.

You Sign Here

Accepted by Employer—Wm. E. Dewey.

Do Not Write Below This Line

Accepted ........................................

(Artist)

Music Corporation of America
Authorized Agent

..............................

Return All Copies Signed to
Music Corporation of America
430 N. Michigan Avenue
Chicago
American Federation of Musicians
License No. 1

Form-P

by the Music Corporation of America for said bookings was in the form of commissions.

8. The laws, rules and regulations of the Federation became and were a part of the several contracts covering the engagements of plaintiff and the orchestra of which plaintiff was the leader during the year 1938, which laws, rules and regulations have been offered and admitted in evidence and are identified as Plaintiff's Exhibits Numbers 23 and 24, which, by

---

December 30, 1937 ba

Music Corporation of America

No. 6917 D

Representing
Griff Williams and His Orchestra

...............................
(Number of artists or musicians)

The undersigned employer engages the attraction above named and attraction agrees to perform upon the following terms:

Date(s) of engagement—January 14, 1938.

Place of engagement—River Oaks Country Club.

Street Address ........................................................................................

City and State—Houston, Texas.

Hours and Special Instructions:

Attraction agrees to play or perform for three consecutive hours (with usual intermissions) beginning at 9:00 P. M. Standard Time at place of engagement, unless otherwise herein provided. Place of Engagement Must Be Specified.

10:00 P. M. until 3:00 A. M.
*"Management, Music Corporation of America"*

Must appear in all announcements and advertising matter of employer wherever the name of the attraction is used.

Price agreed upon—$500.00

Deposit—None

(Certified Check, Money Order, or Bank Draft

Received by ....................
...................... 19......
M. C. A. by ....................

Balance to be paid in United States currency to Attraction Leader or Music Corporation of America, on its demand before 10:00 P. M. on date of engagement, or earlier on his or its demand. Overtime Charge ...................................................................................................

It is agreed that all the laws, rules, and regulations of the American Federation of Musicians are a part of this contract. Employer agrees to pay the difference, if any, between the compensation herein provided and a sum equal to five (5%) per cent over the Federation scale in effect. Terms of resale of attraction by Employer must comply with regulations and prices of the Federation Local wherein attraction is to perform. In signing this contract, the Employer acknowledges his (her or their) authority to do so, and also hereby assumes liability for the amount stated herein. Agreement of attractions to perform is subject to detention by sickness, accident, or accident to means of transportation used by attraction, or by any act or regulation of any public authority, civil tumult, strike, epidemic, serious interruption of transportation services or any legitimate or unavoidable cause, strikes, Acts of God, and conditions beyond control of such attraction or representative. There are no exceptions to this contract unless stipulated in writing. No deductions are to be made for any reason whatsoever.

No part of the performance of attraction shall be broadcast by radio or otherwise.

If the compensation of Attraction is on a guarantee and percentage basis, then employer agrees:

(A) to use no passes except to bonafide newspaper representatives and not to reduce the stipulated dancing or admittance charges as herein fixed.

(B) that the dancing charge shall be

Per Couple $........; Male $........; Female $........; Spectator $........

(C) that the additional (gate) charge (if any) for admittance shall be

Per Couple $........; Male $........; Female $........; Spectator $........

(D) that the charge for auto parking shall be $..............; for clothes checking $............

(E) M. C. A. shall have the privilege of using its own tickets exclusively, and also of appointing its own ticket takers, who shall take tickets at all entrances.

You Sign Here

Accepted by Employer—John Blodgett Davis

Street Address—Rice Hotel

Allegro by

City and State—Houston, Texas

John Blodgett Davis
Chairman

---

Do Not Write Below This Line
Attraction Sign Here..............
By Music Corporation of America
Authorized Representative
Per .............................

Return All Copies Signed To
Music Corporation of America
Tower Petroleum Bldg.
Dallas, Texas
American Federation of Musicians
License No. 1

Form 1N

reference, are severally and respectively incorporated herein and made a part of this finding of fact.

9. The Constitution of the Federation is identified as Plaintiff's Exhibits Numbers 23 and 24, which, by reference, are severally and respectively incorporated herein and made a part of this finding of fact.

10. The procedure through which the orchestra of which the plaintiff was the leader was booked, was as follows: The Music Corporation of America presented to

---

Music Corporation of America

No. 5342 CO
May 4, 1938 RF:LK

Representing
Griff Williams and His Orchestra
....................................
(Number of artists or musicians)

The undersigned employer engages the attraction above named and attraction agrees to perform upon the following terms:

Date(s) of engagement—May 30, 1938.

Place of engagement ...............................................................................

Street Address........................................... ........City and State—Dubuque, Iowa

Hours and Special Instructions:

Attraction agrees to play or perform for three consecutive hours (with usual intermissions) beginning at 9:00 P. M. Standard Time at place of engagement, unless otherwise herein provided. Place of Engagement Must Be Specified.

Deposit to be made by Money Order, Bank Draft or Cashier's Check. Hours: ..................
"*Management, Music Corporation of America*"

Must appear in all announcements and advertising matter of employer wherever the name of the attraction is used.

Price agreed upon—Privilege: Fifty per cent Gross Received $......................
 Receipts, Guarantee $500.00.
 ............................ 19....
Deposit—$250.00
(Certified Check, Money Order, or Bank Draft) M. C. A. by......................

Balance to be paid in United States currency to Attraction Leader or Music Corporation of America, on its demand before 10:00 P. M. on date of engagement, or earlier on his or its demand.

Overtime Charge ...........................................................................................

It is agreed that all the laws, rules, and regulations of the American Federation of Musicians are a part of this contract. Employer agrees to pay the difference, if any, between the compensation herein provided and a sum equal to five (5%) per cent over the Federation scale in effect. Terms of resale of attraction by Employer must comply with regulations and prices of the Federation Local wherein attraction is to perform. In signing this contract, the Employer acknowledges his (her or their) authority to do so, and also hereby assumes liability for the amount stated herein. Agreement of attraction to perform is subject to detention by sickness, accident, or accident to means of transportation used by attraction, or by any act or regulation of any public authority, civil tumult, strike, epidemic, serious interruption of transportation services or any legitimate or unavoidable cause, strikes, Acts of God, and conditions beyond control of such attraction or representative. There are no exceptions to this contract unless stipulated in writing. No deductions are to be made for any reason whatsoever.

Music Corporation of America acts only as agent and assumes no liability for the payment of the excise tax levied on employers under the Social Security Act of the United States, in connection with the services rendered pursuant hereto by the Attraction.

No part of the performance of attraction shall be broadcast by radio or otherwise.

If the compensation of Attraction is on a guarantee basis, then employer agrees:

(A) to use no passes except to bonafide newspaper representatives and not to reduce the stipulated dancing or admittance charges as herein fixed.

(B) that the dancing charge shall be
Per Couple $........; Male $........; Female $........; Spectator $........

(C) that the additional (gate) charge (if any) for admittance shall be
Per Couple $........; Male $........; Female $........; Spectator $........

(D) that the charge for auto parking shall be $..............; for clothes checking $..............

(E) M. C. A. shall have the privilege of using its own tickets exclusively, and also of appointing its own ticket takers, who shall take tickets at all entrances.

You Sign Here

Accepted by Employer—Dubuque Amusement Corporation; By C. A. Kunz.

Street Address—2011 Central City and State—Dubuque, Iowa

---

Do Not Write Below This Line

Attraction Sign Here..............................

By Music Corporation of America

Authorized Representative a Delaware Corp.

Per ..........................................

Return All Copies Signed To
Music Corporation of America
430 N. Michigan Avenue
Chicago
American Federation of Musicians
License No. 1

Form 1N

the prospective establishment a number of orchestras and advised it as to the standing and qualifications of each of the prospective orchestras. In addition to receiving these recommendations, the representative of the establishment customarily made inquiries of the manager of other establishments where the plaintiff and the orchestra of which the plaintiff was the leader had played, listened to their music on the radio, and if he found the style of the music adaptable to his particular establishment, and the contract price suitable, he engaged the orchestra. In general—and there may be occasional exceptions—the establishments, in negotiating or making the contracts for the engagements, were not concerned with the identity of the individual musicians in the orchestra, and did not ask, and were not told, their names. The establishments were familiar with plaintiff and the orchestra of which plaintiff was the leader, its reputation and its special quality of music, and they relied on plaintiff to bring an organization composed of musicians selected and rehearsed by him and capable of performing its special quality of music.

11. Plaintiff himself, or by his agent, collected in a lump sum from the establishments engaging plaintiff and the orchestra of which plaintiff was the leader, the compensation of plaintiff and the members of the orchestra of which plaintiff was the leader to which they are entitled under the several contracts. Upon receiving such compensation from said establishments, the plaintiff distributed and paid to the members of the orchestra, who were known as "sidemen", the compensation due to them respectively.

12. The compensation paid by the establishments varied with and was sometimes more, but never less, than the minimum Federation scale of wages for leaders and "sidemen" as fixed for the local union jurisdiction in which the establishment was located. Plaintiff and the "sidemen" received compensation only for their services actually rendered pursuant to the terms of contracts with establishments and none for the periods between engagements. The "sidemen" received the compensation agreed upon between the plaintiff and the "sidemen", within the limits of the Federation rules. The agreements between plaintiff and the "sidemen" were oral. The establishment did not fix the compensation of the individual "sidemen." This

was in accordance with the established custom of the trade. Out of the amount received by plaintiff from the several establishments, the plaintiff paid the traveling expenses of the orchestra, commissions and other miscellaneous expenses, as well as the compensation of the "sidemen", and the residue, if any, which in no event was less than the minimum scale for leaders, belonged to the plaintiff.

13. Plaintiff selected the "sidemen" and passed on the qualifications of the "sidemen" of the orchestra of which he was the leader during the year 1938. Each "sideman" was a member of the Federation and his relationship with the plaintiff was defined and limited by the Constitution, By-Laws, Rules and Regulations of the Federation. The association of the "sidemen" with the orchestra of which plaintiff was the leader could be, and was at times, terminated at the instance of the plaintiff. There were various changes from time to time in the personnel of the orchestra. In the year 1938 there were at least seven changes in the personnel of the orchestra of which plaintiff was the leader.

14. Plaintiff exercised his skill as a musician to interpret music in such a manner as to secure certain musical effects. In order to secure such musical effects plaintiff made and caused others to make arrangements of some of the regularly published stock compositions. These arrangements were added to plaintiff's library of sheet music and from this library of sheet music plaintiff customarily selected the compositions to be performed. Occasionally plaintiff played special music for floor shows promoted by the establishment.

15. The "sidemen" dressed alike. Each "sideman" owned both formal and informal dress, and the "sidemen" owned the instruments, other than the pianos. The plaintiff owned music racks and a public address system for use where not supplied by the establishment.

16. Plaintiff and the orchestra of which he was the leader were engaged by the several establishments during the year 1938 with the expectation of profit to such establishments.

17. When copyrighted music was played by plaintiff and the orchestra of which he was the leader during the year 1938 and a license was required, such license was procured by the establishment, at its expense, from the owner or controller of the copyright.

18. The expenses of advertising "Griff Williams and His Orchestra" was directed, controlled and borne by the establishment at which such orchestra was playing.

19. The establishments for which plaintiff and the orchestra of which plaintiff was the leader performed during the year 1938 at times did the following things:

(a) Determined the number of musicians to be employed and the instrumentation.

(b) Owned or controlled the premises at which the services were performed.

(c) Furnished at their own expense implements for facilitating the performance of the orchestra, such as pianos, music racks, chairs, sound amplifiers, microphones and special lighting facilities.

(d) Designated and at times changed the room and the specific place in the room within the premises of the establishments, or elsewhere, where the orchestra performed.

(e) Gave the orchestra leader directions covering what the establishments required or expected of the leader and the orchestra.

(f) Prescribed the route and manner whereby the members of the orchestra reached and left the orchestra stand.

(g) Prescribed the rooms or parts of the establishments to which the musicians were to repair and confine themselves during intermissions and rest periods or while not performing.

(h) Required (1) uniformity in dress; (2) which uniformity varied from occasion to occasion; and (3) prescribed unusual dress or attire which was furnished by the establishments, to be worn by the members of the orchestra when so directed.

(i) Regulated the deportment and personal conduct and dress of the leader and members of the orchestra while on the premises of the establishments, whether or not during the hours of performance, and especially matters relating to visiting at tables occupied by guests or other contacts with guests or other persons working in the establishments.

(j) Procured the required licenses for the performance of copyright music and required the orchestra to conform to any pertinent restrictions in connection therewith.

(k) Required (1) the members of the orchestra to broadcast over the radio at specified times and places under contractual arrangements made only between the establishments and the broadcasting facility, and (2) required the musical program to be broadcast to be submitted in advance and subject to censor and change.

(1) Required the musicians to coordinate and conform to their convenience in the service of food and beverages and to the schedule of the floor shows or other music or entertainment separately employed by the establishments.

(m) Required the leader or other member of the orchestra to act as introducer or master of ceremonies in connection with any talent separately employed by the establishments, or to make such announcements as they designated.

(n) Required the performance of special features by members of the orchestra as vocalists, glee clubs, soloists, etc., and directed the staging of the performance in accordance with their ideas of showmanship.

(o) Gave constant attention to see that their own ideas of first-class showmanship were carried out.

(p) Required the leader or other members of the orchestra to audition other talent, either on or away from the premises controlled by the establishments, or to perform in connection with other groups, either on or away from the premises of the establishments.

(q) Directed certain members of the orchestra not to perform at specified times and on certain occasions.

(r) Required the orchestra (1) to rehearse at such time and place as it designated with other talent separately provided by the establishments; and (2) to play any music specially required by such other talent in the tempo, style and manner which was designated either by the establishments or the talent, as the case may be.

(s) Dictated (1) the style of music; (2) its length and tempo; (3) its volume; and (4) designated selections and (5) order and type of selections or numbers to be played.

(t) Determined (1) the time the musicians were to appear before the performance was scheduled to begin; (2) the time when the performances were to begin and end; (3) the hours of work; (4) the time when intermissions and rest periods were to be taken (subject to the regulations of the Federation) and their length.

(u) Furnished verbal, typewritten or printed instructions to the orchestra cover-

ing matters of punctuality, dress, deportment and other details of the performance, including prohibitions against the use of certain selections and the requirement that certain specified selections be rendered.

The Court having heretofore on April 30, 1941, made and filed herein findings of fact, and the Court having heard arguments of counsel, now states the following conclusions of law:

(1) The Court has jurisdiction of the parties hereto and the subject matter hereof.

(2) During the year 1938 the plaintiff was not the employer of the musicians composing the orchestra of which plaintiff was the leader within the meaning of Section 804 of Title VIII of the Social Security Act of 1935, as amended, 42 U.S.C.A. § 1004.

(3) The taxes assessed against plaintiff, for which recovery is sought, were erroneously and illegally assessed against and collected from him and he is entitled to recover the same as prayed for in his complaint, together with interest thereon.

(4) Judgment should be entered for plaintiff in the sum of $536.04, together with interest on $93.58 of such sum from April 28, 1938, and interest on $442.46 of such sum from February 3, 1940, until paid.