**INDIAN REFINING CO. v. DALLMAN, Collector of Internal Revenue.**

No. 68.

District Court, S. D. Illinois, S. D.

Feb. 17, 1940.

Booth & Conner, of Louisville, Ky., and Giffin, Lindner, Newkirk & Jones, of Springfield, Ill. (James T. Nielsen, of Chicago, Ill., of counsel), for plaintiff.

Alden, Latham & Young, of Chicago, Ill., for intervener.

Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., both of Springfield, Ill., and Thomas G. Carney, Atty., Tax Division, Department of Justice, of Washington, D. C., for defendant.

BRIGGLE, District Judge.

The Indian Refining Company, a Maine corporation, having a principal place of business at Lawrenceville, Illinois, filed its bill of complaint herein on November 13, 1939, against Vincent Y. Dallman, United States Collector of Internal Revenue, for the Eighth Collection District of Illinois, to recover certain sums paid by it under ·

protest as taxes under Titles VIII and IX of the Social Security Act of August 14th, 1935, 42 U.S.C.A. §§ 1001–1110, with respect to certain compensation paid by it during the years 1938 and 1939, as commissions to Frank J. Kolb, its consignee at Paducah, Kentucky.

The question for determination is whether Kolb and his assistants were employees of the Indian Refining Company within the meaning of the taxing act in question.

Under Sections 801 and 804 of Title VIII, 42 U.S.C.A. §§ 1001, 1004, which is now known as the "Federal Insurance Contributions Act," taxes were levied on employees and employers respectively, equal to certain percentages of the wages received by and paid to them with respect to employment during the calendar year 1937 and succeeding years. · Under Section 901 of Title IX, 42 U.S.C.A. § 1101, which is now known as the "Federal Unemployment Tax Act," taxes were levied on employers equal to certain percentages of the total wages payable by such employers with respect to employment during the calendar year 1936 and succeeding years. It is further provided by Title IX that the taxpayer may credit against the tax imposed by Section 901 the amount of contributions, with respect to employment during the taxable year, paid by him into an unemployment fund, under a state law which may be certified by the states and submitted to and approved by the Social Security Board, not to exceed 90% of the tax with which the taxpayer is credited.

The Social Security Act, in both Titles VIII and IX, defines "employment" as used in the Act, as "any service, of whatever nature, performed within the United States by an employee for his employer, except * * *." See Section 811(b), and 907(c), 42 U.S.C.A. §§ 1011(b), 1107(c).

Regulations defining the term "employment," known as 90 and 91, were duly prescribed and approved by the Commissioner of Internal Revenue pursuant to the provisions of said two titles and other provisions of the Internal Revenue laws, on February 17, 1936 (relating to Title IX), and on November 9, 1936 (relating to Title VIII). In both of said regulations it was specifically provided that to constitute an "employment" under the provisions of said two titles, "the legal relationship of employer and employee must exist." By said regulations certain rules were stated in accordance with which it could be determined whether such legal relationship exists. Those regulations contain the following provisions: "* * * . Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done. * * *"

The Indian Refining Company as consignor entered into two consignment agreements with Frank J. Kolb, of Paducah, Kentucky, as consignee, the first dated February 1, 1937, and the second dated February 1, 1939, whereby it contracted with Kolb for the marketing and distribution of the consignor's products at two particular points, Paducah, Kentucky, and Mayfield, Kentucky. The company erected a bulk station at Paducah, Kentucky, in which Kolb operated his business as consignee, and in connection with which Kolb invested the sum of approximately $6,000 in trucks, pumps, air compressors and office equipment, used in the operation of the bulk plant. Kolb, himself, erected early in 1939 a bulk station at Mayfield, Kentucky, and invested approximately $6,500 in real estate, storage tanks, trucks, pumps, air compressors and office equipment, which he used in this consignment business. Kolb employed five individuals at the Paducah plant and two individuals at the Mayfield plant.

The question whether Kolb and his assistants were employees of the Indian Refining Company under Titles VIII and IX of the Social Security Act was submitted by the Indian Refining Company to the Commissioner of Internal Revenue, who ruled, on September 15, 1939, that they were such employees. Accordingly, the Indian Refining Company filed returns under Titles VIII and IX on September 30, 1939, and thereafter on October 2, 1939, paid under protest taxes under Title IX in the sum of $380.97, with respect to the wages of Kolb and his employees for the calendar year 1938; and also paid under protest taxes under Title VIII in the sum of $84.42, with respect to the wages of Kolb and his employees for the second quarter of the calendar year 1939. The periods covered by these two payments

were the respective periods under each title immediately preceding the dates of said payments. Claims for refunds under both titles were duly made and denied. The complaint of the Indian Refining Company demanded judgment for these two sums thus paid, with interest thereon. The defendant answered admitting the formal allegations of the complaint, and denying other allegations including the allegation of the Fourteenth paragraph thereof, reading as follows: "Fourteenth: Plaintiff has at no time supervised, directed or controlled the manner or the details of any work performed or engaged in by the said Frank J. Kolb, or his employees, pursuant to the aforesaid Consignment Agreements or otherwise."

Frank J. Kolb, consignee under the consignment agreements above referred to, presented a motion asking leave to intervene in this action as party plaintiff, alleging that the representation of his interests by the Indian Refining Company is or may be inadequate; that he will be bound by judgment in the action; that his claims under the consignment agreements and the main action have questions of law and fact in common; and that his intervention will not, to any extent, delay or prejudice the adjudication of the rights of the original parties. Kolb's motion to intervene was argued before the trial of the main action. Kolb points out that under clause sixth of the consignment agreements he is obligated as consignee to pay "any and all premiums, contributions and taxes for * * * unemployment insurance and for old age pensions, annuities and retirement benefits, now or hereafter imposed by or pursuant to federal and state laws, which are measured by the wages, salaries or other remuneration paid to persons employed as consignee in connection with the performance of this contract;" and that he is further obligated as consignee "to indemnify and hold consignor harmless against any liability for any such premiums, taxes or contributions representing consignee's employees which may be assessed against consignor." Kolb argues that he is in effect the real party in interest in this controversy, as the above clause of the agreements makes him liable to the Indian Refining Company for any taxes with respect to the wages of his employees which that company has to pay.

■ It is unnecessary to decide whether or not Kolb has the right to intervene under Rule 24(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that the representation of his interests by the Indian Refining Company is or may be inadequate; for the Court is of the opinion that Kolb should be permitted to intervene in this proceeding, by reason of the fact that his interest under clause sixth of the consignment agreements makes him the person ultimately liable, and as this action may determine such liability. Under clause sixth of the agreements, the Indian Refining Company has a somewhat perfunctory interest in the controversy, as to its liability for taxes under either Title VIII or Title IX with respect to the wages of Kolb's employees, because the ultimate liability for these taxes will fall on the consignee, Kolb. Kolb's claims have questions both of law and of fact in common with those presented in the plaintiff's complaint, and, therefore, his motion to intervene is sustained under Rule 24(b) of the Rules of Civil Procedure providing for permissive intervention.

On the day of trial the parties filed in Court a stipulation of facts which embraced the authenticity of the principal exhibits filed with the complaint and other uncontroverted items.

The consignment agreements provide in substance as follows: That the consignee shall diligently market and distribute petroleum products supplied by consignor; shall promptly and correctly account, on forms provided by consignor, for consignor's moneys, goods, products, equipment, etc.; shall sell the products of consignor for cash or on credit properly authorized, and shall not exchange them for other property or merchandise for private use; shall not sell for less than consignor's authorized prices, nor enter into any secret agreements with any customer or competitor for the purpose of reducing prices or of controlling business; shall not retain any moneys due him from consignor from or as against funds or any other property of consignor for which he is accountable; shall pay all expenses incident to the proper operation of the bulk station plant; shall furnish, at his expense, trucks and other equipment required for the distribution of petroleum products, such trucks and equipment to conform with consignor's standards therefor; shall hire and pay the wages of all assistants and employees required for the proper and diligent opera-

458

tion of the bulk station plant, and shall assume full direction and control over and responsibility for all such assistants and employees; shall furnish a fiduciary bond to protect consignor against losses sustained by consignor through failure of consignee to account for moneys or property belonging to consignor; and shall not assign the consignment agreement without the prior written consent of the consignor.

The consignment agreements further provide in substance that the consignee shall be entitled to the commissions set forth in the agreements on the sales made by consignee of the petroleum products enumerated; that the contract shall continue in force until terminated by either party on five days written notice; that the title to all products consigned and delivered to consignee shall at all times remain in consignor until sold; that in the event of the termination of the agreement, the consignor shall have the right for a period of not to exceed three months to use the consignee's storage facilities located at consignee's bulk station plants, to replenish its stock, to sell and deliver its products from the premises, and to remove during said period all of its products left on hand, upon paying a certain rent per month to the consignee for the time during which such facilities are so used; and finally, that in the event of the termination of the contract, the consignee shall not engage in the sale of petroleum products within a radius of twenty-five miles from the designated city for a period of five years from the date of such termination.

The testimony developed the fact that the Indian Refining Company maintains a representative with an office in the Paducah bulk plant, which is operated by Kolb. This representative covers a district supplied by five bulk plant consignees, such as Kolb, and his duties consist mainly in assisting sales. It appears also from the testimony that other representatives of the Indian Refining Company made occasional business calls at the Paducah plant, and that a register of their names and positions was kept on the wall outside of the office of the Indian representative. It seems that these visits were for three main purposes: (1) For sales promotion; (2) for inspection of and repairs to the property of the company; and (3) for checkups on cash and stock inventories owned by it.

The facts brought out in the testimony, together with the facts which have been stipulated by the parties, demonstrate that no control over the means, methods and details of operation by Kolb was reserved by the Indian Refining Company, either by the terms of the consignment agreements or in actual practice. The provisions of the contracts and the actual conduct of the business were directed toward the result to be obtained under the consignment agreements; that is, the amount of the sales. The Indian Refining Company was interested solely in the volume of sales, and had no right, nor in fact did it make any attempt, to control the manner in which the consignee, Kolb, operated his business, except to assist Kolb in securing new sales outlets and in increasing the volume of his sales. The testimony showed that the consignment agreements embodied all of the contractual relations of the parties, and none of the provisions therein gave the consignor any right to control the methods used by Kolb in managing the business or the manner in which Kolb's employees conducted the business. The court finds very little if anything in the relationship between Kolb and the Indian Refining Company that would justify the conclusion that Kolb is an employee of the Indian Refining Company. He is an independent merchant selling nationally advertised products.

Manufacturers of nationally advertised products frequently impose many conditions on the merchants who sell such products. They also are cooperative with the merchant and aid in every way possible the sales of their merchandise. For example, a manufacturer will frequently operate a booth in a department store for the purpose of demonstrating and acquainting the public with his products. If in the case at bar Kolb and his employees are held to be employees of the Indian Refining Company, it would be but a step further to hold many merchants to be employees of manufacturers.

Under the test, therefore, laid down by the Commissioner of Internal Revenue himself in Regulations 90 and 91, under Titles VIII and IX, it would seem to follow inevitably that Kolb and his bulk station employees are not employees of the Indian Refining Company.

The case of Barnes v. Indian Refining Company, 280 Ky. 811, 134 S.W.2d 620, 623, decided on June 23, 1939, was based on this same contractual relationship between the Indian Refining Company and

Frank J. Kolb under these two particular consignment agreements.

The company in that case asked for a declaration of its rights under the Kentucky Unemployment Compensation law, Ky.St.Supp.1939, § 4748g-1 et seq. In the Kentucky Act "employment" was specifically defined as being "the legal relationship of employer and employee." With regard to the meaning of these words, the court said: "We are necessarily brought to the conclusion that 'the legal relationship of employer and employee' means what it says and that the words are synonymous with the legal concept of master and servant. * * * Any other construction would lead us into the purest speculation uninvited by the plain terms of the Act itself. We will not seek to read indefiniteness into that which is definite or vagueness into that which is clear."

The court further said:

"In the contract between the company and Mr. Kolb we find no right to control details or methods of procedure. The contract is directed toward results and not how they are obtained. There is no proof of any modification of this agreement, but, on the contrary, the petition alleges facts indicating that no control of methods exists and that Mr. Kolb is to all intents and purposes an entrepreneur, free to manage his business as he sees fit.

"He is responsible to the company for results, but, except to the extent that an interest in the results may influence methods of operation, the company does not control the details of his operation or have a right to exercise any control thereof."

Consignment Agreements, consisting of exactly the same general provisions as those included in the consignment agreements between the Indian Refining Company and Kolb, were considered also in the case of Texas Co. v. Wheeless, 187 So. 880, decided by the Supreme Court of Mississippi in April, 1939. The provisions of the Mississippi Unemployment Compensation Act imposed an unemployment tax on employers similar to the Kentucky Act. In this Mississippi case, as in the Kentucky case, the court held that the consignee and his employees were not the employees of the consignor, but that the consignee was an independent merchant.

A recent Illinois case states accurately the legal test to be applied to the determination of such a case as the one at bar. In Jones v. Standerfer, 1938, 296 Ill.App. 145, 15 N.E.2d 924, 927, Lola Jones brought an action to recover damages for personal injuries, which she claimed to have sustained when struck by a truck driven by George Standerfer. George Standerfer was employed as a truck driver by Lester Standerfer, who was the agent of the Mt. Vernon Oil Company in Mt. Vernon, Illinois. Jones sued Lester Standerfer and the Mt. Vernon Oil Company and obtained a judgment in the lower court for $5,000 against both defendants. The case shows that the contract whereby the Mt. Vernon Oil Company employed Lester Standerfer for the distribution of its gasoline and oil products, was quite similar to the consignment agreements in the case at bar. Either party could terminate the contract at any time by the giving of notice.

The Court reversed the judgment as to the Mt. Vernon Oil Company, holding that the company had no control over the driver of the truck, but reserved control only as to the ultimate results to be obtained in the sale of oil products, saying:

"From these definitions and the opinions of the courts of last resort of this and other states it is manifest that the decisive inquiry is whether the Oil Company had any control over the driver of the truck and in his management and operation of the same.

"The contract between the parties controls that question. We are of the opinion that the control reserved by the contract to the Oil Company is as to the ultimate results to be obtained in the sale of oil products and that it pertains to the contractual features rather than to a control over the details and physical movements necessary to accomplish the results sought in the sale of oil products. Control was reserved to fix the sale price, to extend credit, to require reports and inventories, but it did not undertake to control the hours of labor, the time to make collections, the persons to solicit for orders. To be more specific in reference to the use of the truck it will be noted that the Oil Company had no interest in the truck, assumed no liability to pay the expense of operation. In fact it did not even direct that the products should be delivered by truck * * *."

The same criterion which was applied by the Illinois Court, in support of its decision that Standerfer was an independent contractor, leads to the inevitable conclusion that Kolb is an independent mer-

chant. The evidence in this case clearly indicates that Kolb, the consignee, is not an employee of the Indian Refining Company, but rather is an independent business man engaged in his own independent business as a merchant or factor. There is nothing in the Social Security Act which suggests that the terms "employer" and "employee" should receive anything but their ordinary construction.

The finding will be for plaintiff and proposed findings of fact, conclusions of law and a judgment order, consistent herewith, may be submitted at a date to be fixed.