**WILLIAMS v. UNITED STATES.**

No. 7788.

Circuit Court of Appeals, Seventh Circuit.

Feb. 27, 1942.

J. Albert Woll, U. S. Atty., of Chicago, Ill., Samuel O. Clark, Jr., Asst. Atty. Gen., J. P. Wenchel, Bureau of Internal Revenue, of Washington, D. C., and Carl J. Marold, J. Louis Monarch, and Gerald L. Wallace, Sp. Assts. to Atty. Gen., for appellant.

Samuel T. Ansell and Wm. S. Tarver, both of Washington, D. C., and Chas. O. Rundall and Horace A. Young, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff, entered May 2, 1941, in an action to recover social security taxes with interest, paid by plaintiff (the taxpayer) for the calendar year 1938. Such taxes were imposed under Title VIII, Section 804 of the Social Security Act of 1935, as amended, 42 U.S.C.A. § 1004, upon the theory that plaintiff was an employer.

The court below made rather voluminous findings of fact upon which it concluded that plaintiff was not an employer within the meaning of the Act and, therefore, the taxes had been illegally assessed and collected. Hence the judgment appealed from. While the findings made by the District Court are material—in fact, binding upon us if substantially supported, —we regard it as unnecessary to set them forth in toto for the reason that they are reported in 38 F.Supp. 536.

Briefly, it appears from the non-controverted findings that plaintiff, during the taxable year, was the leader of a dance orchestra known as "Griff Williams and His Orchestra," which consisted of from twelve to fourteen male musicians. It was assembled by plaintiff in San Francisco during the year 1934, and, since 1935, has been booked and known as "Griff Williams and His Orchestra." During the taxable year, the orchestra performed at some twenty-two establishments, ranging from the West coast of the United States to as far East as Chicago, Illinois. These performances consisted of playing popular dance music at both "steady engagements," (those for one week or longer) and "single engagements" (those for one night only) at hotels, restaurants, night clubs, ballrooms, amusement parks, clubs, colleges and civic organizations. (The place of performance is sometimes referred to as "the establishment" and the orchestra as "the attraction.") The members of the orchestra, known in the trade as "sidemen," were selected and trained by plaintiff, with an oral agreement that each individual sideman would receive for his services a certain stipulated compensation which, in no event, was or could be less than the scale of wages fixed by the local union in whose jurisdiction the engagement was performed. The establishment had no voice in fixing the compensation of the sidemen, nor in their selection.

In 1934, plaintiff entered into an agreement with the Music Corporation of America, a booking agent, making this corporation his exclusive agent for the purpose of booking engagements for the orchestra, for which services the agent was paid a commission. All of the engagements during the year 1938 were booked by this corporation. Written contracts, typical examples of which are included in the findings of the court, were entered into between the Music Corporation and the management of the various establishments. The latter, in making the contracts, were not concerned with, and did not know, the names or identities of the individual musicians. They were familiar with the reputation and special quality of music of plaintiff's orchestra and they relied on him to supply an organization composed of musicians selected, rehearsed and capable of performing the orchestra's special quality of music. Plaintiff exercised his skill as a musician to interpret the music in such a manner as to produce certain musical effects, and to do so, had his own library of sheet music from which he customarily made selections for a performance.

By the terms of the contract, the Music Corporation agreed to furnish the establishment with the attraction designated as "Griff Williams and His Orchestra," at a certain time and place for an agreed price. The hours of performance were stated. In some of the contracts the number of sidemen was stated—in others it was not. Each

of the contracts incorporated by reference the laws, rules and regulations of the American Federation of Musicians. By such rules and regulations, certain restrictions were placed upon the contracting parties with respect to prices for performance, the number and length of rehearsals and intermissions, cancellation of contracts and conduct of the leader and sidemen. The establishment is referred to in the contracts as the "employer" and in the same manner, in the by-laws of the Federation, although in the latter, plaintiff is also referred to as "employing the sidemen." The sidemen owned both formal and informal dress and furnished their own instruments other than the piano which was furnished by the establishment. Plaintiff owned music racks and a public address system for use where this equipment was not supplied by the establishments. The latter owned and controlled the premises on which the services were performed and designated the particular room on the premises where the orchestra was to rehearse and perform. Occasionally the orchestra played special music for floor shows promoted by the establishments. On such occasions the selections to be played were made by the establishments, or by the participants in the floor shows. This called for special rehearsals with the other talent, at times and places fixed by the establishment within the limit of the Federation rules. The time of regular rehearsals, however, was fixed by plaintiff. As stated, this is a brief synopsis of the non-controverted findings.

■ There is some controversy concerning Finding No. 11 to the effect that plaintiff, upon receiving the contract price from the establishments, "distributed and paid" to the sidemen the compensation due them. It is urged by the defendant that the word "distributed" indicates plaintiff was acting as the agent of the establishment in making such distribution. Such a construction, so it is argued, leaves the finding unsupported. We think that such is the case. Plaintiff testified that the contract price was paid to him by check and that he in turn paid the sidemen by his own checks in accordance with his agreement with them. The record discloses conclusively that there was no agreement between the establishments and the sidemen, and that the former were without knowledge as to the agreements between the latter and plaintiff. More than that, there is no question but that plaintiff was liable, in accordance with his agreement with the sidemen, irrespective of whether he received the contract price from the establishments.

The chief controversy, however, relates to Finding No. 19, consisting of 21 paragraphs, each purporting to show some element of control exercised by the establishments over plaintiff and the orchestra. It is not practical to discuss the numerous elements of this finding, and furthermore, we do not think it is necessary. The finding reads: "The establishments for which plaintiff and the orchestra of which plaintiff was the leader performed during the year 1938 at times did the following things: * * *" (Then follows 21 paragraphs.) Thus, the control disclosed by such a finding has little, if any, probative effect. For aught that is found, such acts might have represented isolated incidents and not the usual and ordinary relation existing between plaintiff and the establishments. A finding as to what was done "at times" is of such indefinite and uncertain meaning as to furnish little, if any, support for a conclusion predicated thereon. Furthermore, we are of the view that any acts of control "at times" exercised by the establishments are relatively unimportant when compared with other facts found by the court and disclosed by plaintiff's contracts with the establishments, as well as with the usual manner in which the services of the orchestra were performed.

■ There is also a controversy concerning the right to hire and discharge the sidemen. Concerning this matter, the court found:

"* * * The association of the 'sidemen' with the orchestra of which Plaintiff was the leader could be, and was at times, terminated at the instance of the Plaintiff. * * *"

There is no occasion to repudiate this finding. It is true as far as it goes, and we accept it. Notwithstanding plaintiff's insistence that the establishments had the right to hire and discharge, the court made no such finding and we are convinced there is no evidence to support such an argument. We think the record discloses without question that the right to hire and discharge was the sole prerogative of plaintiff. The By-Laws of the Federation, made a part of the contract between plaintiff and the establishments, provide:

"Members of the Federation are only permitted to accept, solicit or negotiate engage-

ments to play in bands or orchestras from members who contract to furnish bands or orchestras, never from the employers or the agents of such to whom the band or orchestra is furnished. * * *"

Thus the sidemen were prohibited from accepting engagements with the establishments or their agents. It would seem to follow that no relation of employer and employee did or could exist between the establishments and the sidemen. By the preclusion of such relation, the right of the establishments to hire and discharge was likewise precluded.

█ For the purpose of this opinion, we think it is unnecessary to further consider defendant's criticism of the findings. We now come to a consideration of the law applicable to the facts as related. It has been held by this and other courts that employment within the meaning of the Statute connotes the legal relationship of employer and employee as those terms were defined and understood at the time of the enactment—furthermore, that an independent contractor is not an employee. Indian Refining Co. v. Dallman, 7 Cir., 119 F.2d 417, affirming D.C., 31 F.Supp. 455; Texas Co. v. Higgins, 2 Cir., 118 F.2d 636, and Jones v. Goodson, 10 Cir., 121 F.2d 176. The real question in controversy, therefore, is: Was plaintiff an independent contractor, or an employee of the establishments for which his orchestra performed? If the former, he was the employer of the members of the orchestra and subject to the tax. If the latter, the establishments and not the plaintiff were liable. It follows that if plaintiff was an employee of the establishments, the sidemen were likewise such employees, and that if plaintiff was an independent contractor, the sidemen were his employees and not those of the establishments.

█ In an effort to sustain their respective positions as to the status occupied by plaintiff, the parties have cited a great number of authorities which demonstrate a considerable contrariety of opinion as to the elements essential to an independent contract. A reading of such cases further demonstrates that each case must depend to a considerable extent upon its own facts. Many of the cases relied upon, therefore, are of little, if any, assistance in solving the instant problem. The test usually employed for determining the distinction between an independent contractor and an employee is found in the nature and the amount of control reserved by the person for whom the work is done. There seems to be no dispute but that the employer-employee relationship exists only where the person, for whom the work is done, has the right to control and direct the work, not only as to the result to be accomplished by the work, but also as to the details and means by which that result is accomplished. Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440; Jones v. Goodson, 10 Cir., 121 F.2d 176, 179. Plaintiff agrees that it is the right and not the exercise of control which is the determining element.

█ A number of elements have been enumerated as bearing upon the right to control, such as the right to hire and discharge persons doing the work (Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L. Ed. 582; Densby v. Bartlett, 318 Ill. 616, 149 N.E. 591, 42 A.L.R. 1406), the method and determination of the amount of the payment of the workmen (Simonton v. Morton, 275 Pa. 562, 119 A. 732), whether or not the person doing the work is engaged in an independent business or enterprise and, particularly, whether he stands to make a profit on the work of those working under him (Barnes v. Myers, 163 Md. 206, 161 A. 279, Petzold v. McGregor, 92 Ind.App. 528, 176 N.E. 640), which party furnishes the tools or materials with which the work is done (Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L.Ed. 440), and who has control of the premises where the work is done. Murphy v. Herold Co., 137 Wis. 609, 119 N.W. 294.

██ We think it is reasonably certain that any control exercised by the establishments was far short of that necessary to constitute them as the employers of the plaintiff. Even though full credit be given to the findings of the lower court in regard to the control exercised, we do not believe it is sufficient. We have referred heretofore to Finding No. 19 which designates numerous acts performed by the establishments relied upon to show control. As pointed out, however, those acts were found to have been committed by the establishments "at times." Control, so indefinite in its extent, must give way to the uncontroverted findings which lead to an opposite result. Moreover, such control as was exercised, was without right. The status of the parties was plainly fixed by the contracts, including the rules of the Federation, and there is no room for argument that the establishments had any right of control. In

fact, such right was precluded by the rules of the Federation. What appears to have been control can be more aptly described as requests that certain things be done by plaintiff and the orchestra. The fact that·some of such requests were complied with does not indicate or prove the right of control in the establishments, nor is it inconsistent with the theory that plaintiff was performing in the capacity of an independent contractor. The fact that the establishments were referred to in the contracts and sometimes in the rules of the Federation as the employer, and that the contracts were to be performed upon the premises of the establishments, lends some color to plaintiff's contention. They too, however, must give way to more decisive and persuasive circumstances.

■ We have already concluded, not inconsistent with the findings of the court below, that the establishments had no right to hire or discharge members of the orchestra. To our mind, this circumstance alone comes near being decisive. It is difficult to conceive of an employer-employee relationship without such a right on the part of the employer. It is equally inconceivable that such right should rest solely in the hands of the employee. Without this right there could be no effective control by an employer. As was said in Pioneer Construction Co. v. Hansen, 176 Ill. 100, 108, 52 N.E. 17, 19: "* * * and, inasmuch as the right to control involves the power to discharge, the relation of master and servant will not exist unless the power to discharge exists. * * *"

Other cases to the same effect are Casement v. Brown, supra, Shannon v. Nightingale, 321 Ill. 168, 174, 151 N.E. 573.

Another significant fact is that plaintiff was engaged in an independent business for profit. The court found that "* * * the plaintiff paid the traveling expenses of the orchestra, commissions and other miscellaneous expenses, as well as the compensation of the sidemen, and the residue, if any, which in no event was less than the minimum scale for leaders, belonged to the plaintiff." Thus, the plaintiff was in a position to receive a profit from the services of the orchestra. The compensation received by the sidemen was fixed by agreement with the plaintiff, but the amount received by him was to be determined by what was left after the payment of fixed charges. It is also pertinent to observe that the orchestra was not organized and trained at the behest of the establishments, but long prior to the

year in question. In other words, it was a going concern, ready and willing to serve any and all who might contract for its services.

For reasons stated, no good purpose could be served in an attempt to analyze the many authorities cited and relied upon. There are two cases, however, where the facts are quite similar and where the contentions made by the respective parties are almost identical with those argued here. Hill Hotel Co. v. Kinney, 138 Neb. 760, 295 N.W. 397, and Unemployment Compensation Commission v. Mathews, 56 Wyo. 479, 111 P.2d 111. In each of them it was held that the leader of a band or orchestra was an independent contractor rather than an employee of the establishment. In another case, In re Brown, 260 App.Div. 972, 23 N.Y.S.2d 330, it was held that a vocalist engaged by the leader of an orchestra was not an employee of the establishment. The case strongest in support of plaintiff's contention appears to be Steel Pier Amusement Co. et al. v. New Jersey Unemployment Compensation Commission, 127 N.J.L. 154, 21 A.2d 767, 769. In that case a sideman was hired by an orchestra leader and was held to be an employee of the establishment. The court points out, however, that the leader was not customarily engaged in an "independently established trade, occupation, profession or business." The court concluded that he was employed by the leader, as agent, of the establishment. As already noted, we think there can be no question in the instant case but that plaintiff was engaged in an independent business and was not an agent of the establishments.

■ In reaching the conclusion that plaintiff is liable for the tax, we are not unmindful of the purpose of the Act and the objectives sought to be accomplished. We also take note of the unfortunate and, in some respects, anomalous situation in which plaintiff is placed by such a holding. It perhaps is true, as argued, that as a general proposition, an establishment is better equipped financially and otherwise to account for and pay this tax than one in the position of the plaintiff. It also may be true that it would be better for the sidemen for this, and the additional, reason that the Act does not apply to an employer with fewer than eight employees. From this, it is pointed out that an establishment usually has more than the required number of employees, while oftentimes the leader of an orchestra does not. In the latter event, of

course, the members of the orchestra would be entitled to no benefits. It is also suggested that such a holding will result in the loss, by members of an orchestra, including the leader, in wage priority rights against an establishment in the event of bankruptcy. We are of the view, however, that such argument, appealing as it is, should be addressed to Congress rather than the courts. To sustain plaintiff's position would require the court to legislate, which we are without power to do.

It is also pointed out that another result of an adverse decision will be to deprive plaintiff of membership in the American Federation of Musicians for the reason that, as an employer, he will be ineligible. Unfortunate as this may be, we think it is a matter between him and the Federation, and that the court is powerless in the matter.

The judgment of the District Court is reversed.