## GENERAL WAYNE INN, Inc., v. ROTHENSIES, Collector of Internal Revenue.

### No. 1863.

District Court, E. D. Pennsylvania.

Oct. 28, 1942.

Bryan A. Hermes, of Philadelphia, Pa., for plaintiff.

Samuel O. Clark, Asst. Atty. Gen., Andrew D. Sharpe and Carl J. Marold, Sp. Assts. to the Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action for refund of social security taxes paid by the plaintiff. I make the following special

### Findings of Fact:

1. The plaintiff is a Pennsylvania corporation operating a restaurant at Merion, Pennsylvania.

2. The defendant is the duly appointed and acting Collector of Internal Revenue of the United States for the First Collection District of Pennsylvania.

3. As a part of its business of operating a restaurant, the plaintiff provided facilities for dancing, and during the period in question engaged various orchestras of from four to five musicians to furnish music on its premises for the entertainment of its patrons.

4. The first of these orchestras was engaged by the plaintiff in March of 1937 by an oral contract with one Frank Roberts, a drummer, whereby he agreed to assemble an orchestra of four musicians, including himself, to play under his leadership.

5. Under the arrangement between Roberts and the plaintiff the orchestra was to play five nights a week for the weekly sum of $106.25.

6. No definite term of engagement was fixed, and the plaintiff could reduce the number of performances per week or terminate the engagement at will.

7. Prior to the engagement Roberts had no orchestra and the musicians he assembled for this engagement were assembled by him for that purpose only.

8. In November of 1937 the engagement was terminated, the orchestra disbanded, and Roberts accepted employment as a "side man" in another orchestra.

9. In May of 1938 plaintiff entered into a similar arrangement with one DeWilliams, who had been a pianist in the orchestra assembled by Roberts, whereby DeWilliams agreed to assemble an orchestra of four musicians, including himself, under substantially similar terms.

10. The orchestra assembled by DeWilliams, of which he was the leader and Roberts was a side man, played at the establishment of the plaintiff until May of 1940.

11. In May of 1940 plaintiff entered into a similar arrangement with Roberts, by which he would assemble an orchestra to play under his leadership under substantially similar terms.

12. The function of leading this orchestra was divided between Roberts and one Perlman, a violinist.

13. During all the engagements above described payment of the orchestra was made by a single check from the plaintiff to the order of the leader, who cashed the check at the plaintiff's establishment and paid the other musicians.

14. The amount paid by the plaintiff for the orchestra was the amount of the union pay for the number of musicians engaged plus the additional compensation provided in the union scale for the leader.

15. The orchestra rendered its services on the premises of the plaintiff at such places on the premises as were designated by the plaintiff.

16. The time for taking intermissions was specified by the plaintiff.

17. The instruments, with the exception of the piano, were furnished by the musicians themselves.

18. No uniforms were supplied to the musicians by plaintiff and they provided their own dress, formal or informal, as required by the plaintiff.

19. Plaintiff had no right to select or discharge any members of the several orchestras which played at its establishment, the selection or discharge being entirely in the hands of the particular leader at the time.

20. Neither Roberts nor DeWilliams was engaged in an independent business for profit, and their compensation was the same as the compensation of the other members of the orchestra except to the extent that each received during the period of his leadership the additional sum prescribed by the union scale for a leader.

21. On July 29, 1941, plaintiff paid to the defendant the amount of social security taxes due on the compensation paid to the musicians of the above described orchestras and thereafter made due application for a refund of the taxes so paid, which application was rejected by the defendant on October 29, 1941.

### Discussion.

The issue presented by this case is whether the musicians who furnished the music at the General Wayne Inn, a restaurant operated by the plaintiff, were in its employ within the meaning of the Social Security Act of 1935, c. 531, § 804, 49 Stat. 620, 637, 42 U.S.C.A. § 1004, so as to render plaintiff liable for the taxes imposed therein, or whether the leader who assembled the musicians in each instance was an independent contractor. The facts on which the resolution of this issue is to be made have been set forth in the special findings above and will be referred to when relevant to this discussion.

The tests by which the existence of the relationship of "employment" within the meaning of the Act is to be determined are not specified therein. Numerous tests

have been applied in a myriad of decisions in which the resolution of the ultimate issue was deemed to turn on the distinction between the relationship of employee and independent contractor. Yet the application of these tests has varied greatly, depending on whether the ultimate issue was the responsibility of a master for the tort of an alleged servant, the applicability of a workmen's compensation act or the scope of a taxing statute. The weight to be given each of the various factors considered significant in determining the existence of the relationship of "employment" must therefore be ascertained in the light of the ultimate issue dependent thereon.

The government in the case at bar urges that the broad social purposes of the Social Security Act, 42 U.S.C.A. § 301 et seq., require it to be construed in such a way as to include, rather than exclude, as many persons as possible, citing Robert C. Buell & Co. v. Danaher, 127 Conn. 606, 18 A.2d 697, and Globe Grain & Milling Co. v. Industrial Commission, 98 Utah 36, 91 P.2d 512, and that the tests for determining whether one person is legally responsible for the tort of another are not necessarily controlling where the ultimate issue is whether a person applies to a class of wage earners for whom the benefits of the social security program were intended. This is unquestionably true, but the problem in this case is not whether the musicians who played at the General Wayne Inn are within the class of persons for whom that program was intended. There can be little doubt that they are. The real question is whether they were "employed", within the meaning and intendment of the Act, by the plaintiff or by the particular leader as an independent contractor. The problem is to determine on whom the economic burden of the social security program is to be imposed rather than for whom its benefits were designed.

Plaintiff strongly urges that the purposes of the Act are the stabilization of employment and the protection of the public against economic insecurity arising from unemployment, and that, therefore, the determination of the factual question of who wields power to hire and fire wage earners is almost, if not completely, conclusive in the determination of the legal question of who is their employer within the intendment of the Act. Since the evidence clearly shows that as between plaintiff and the several "leaders" who had assembled orchestras at the plaintiff's requests, this power resided in the "leaders", plaintiff urges that they, and not it, must be deemed the employers of the musicians thus assembled.

I am unable to agree with this contention. That the power to hire and fire is the most significant factor in determining upon whom, as "employer" the economic burdens of the social security program were placed, is sound. But it is the power to hire and fire in the broader sense of the power to create or terminate employment, rather than in the narrower sense of determining which of a number of individuals should be chosen to perform or dismissed from performing services, which is involved. It is in this latter sense that the "leaders" have power to hire and fire, but in the former sense this power resided in the plaintiff. Plaintiff was engaged in a business in which the furnishing of dance music, like the furnishing of food and drink, was an integral and important factor in its successful operation. It required the services of musicians, just as it required the services of kitchen help, waiters and bartenders. It conducted a venture for profit, the continued operation of which would improve and directly affect the ability of all those persons to earn their living. Whether they were actually engaged or discharged by plaintiff's manager, its head-waiter, its chef or some one else designated by plaintiff is far less significant than whether they were to have an opportunity to render their services at all, and this was in the control of the plaintiff.

By way of contrast, it would be wholly unrealistic to designate the "leader", i. e., the particular musician who assembled a group to perform at the plaintiff's establishment, as an independent contractor. None of these "leaders" was engaged in business for himself with the design and purpose of making profit in a venture involving the services of others. Each was, like the fellow members of his orchestra, simply a musician who sought employment on the most advantageous terms possible. By virtue of the fact that Roberts was originally approached by plaintiff's manager and asked to assemble a group to play at the plaintiff's restaurant, he assumed for the time the "leadership", but the only benefit he received therefrom was the slight additional com-

pensation prescribed by union regulations for the leader of an orchestra. That "leadership" meant no more than this is forcefully demonstrated by the fact that Roberts, the original "leader" later became a "side man" when DeWilliams, a "side man" under Roberts' "leadership", assembled, at plaintiff's request, a group of musicians for a subsequent engagement at plaintiff's establishment. The power of these "leaders" to hire and fire particular members of the group can hardly be deemed significant in view of the power of the plaintiff to terminate the services of the group in its entirety and render them unemployed.

Griff Williams v. United States, 7 Cir., 126 F.2d 129, the authority most strongly relied upon by plaintiff, presents the converse situation of that of the case at bar and forcefully illustrates the distinctions I have made. In that case the question was presented whether the leader of an orchestra was the employer of a group of musicians so as to be responsible for the tax on their compensation imposed by the Social Security Act. The Circuit Court of Appeals for the Seventh Circuit reversed the holding of the District Court that Williams and his musicians were employees of the establishment in which they furnished the music and held that Williams was the employer of the musicians in his orchestra. In that case, however, Williams was engaged in business for himself. He engaged twelve or fourteen musicians to play in an orchestra known as "Griff Williams and his Orchestra". They performed at a number of establishments during the taxable year. Williams paid the expenses of obtaining bookings, and he paid the men salaries in accordance with contracts he made with them. The gain or loss, after receipt of the contract price from the establishments at which engagements were obtained and the payment of the salaries and other expenses, was the gain or loss of Williams. Whether the musicians had or did not have employment depended, from an economic viewpoint, on the continued operation of the business of Williams and not on the particular establishment in which they were furnishing the music, and he was held to be their employer within the meaning of the Social Security Act.

A consideration of other elements bearing on the existence of the relationship of employment is of little assistance, since they do not bear predominantly in one or the other direction. Control of the premises upon which the work was performed was in the plaintiff, but the instruments, with the exception of the piano, were furnished by the musicians. Payment was made to the leader by a check to his order only, and he in turn paid the members of the orchestra, although it seems clear that plaintiff knew that the total sum it was paying was the amount of the union scale for the number of musicians engaged, and that the leader merely distributed the proceeds of the check on that basis. The "manner" of performing was largely in the control of the leader, although plaintiff designated the general nature of the music to be played, the place where it was to be played, and such matters as when intermissions were to be taken.

The authorities cited are likewise of limited assistance. A number of cases presenting the question of whether members of an orchestra were employed, within the meaning of a State Compensation Act, by their leader or by the establishment in which they played engagements, have been cited by both plaintiff and defendant. No readily discernible line of cleavage may be found. Slight variations in the terms of the contracts or in the extent of the control by the establishment over the manner in which the services were rendered have been regarded as tipping the scale in one direction or the other. Each case, therefore, must be governed largely by its own facts and by the scope and purpose of the statute involved.

In my opinion the plaintiff, engaged in a business enterprise involving the furnishing of music to its patrons, was, under the facts of the case at bar, the employer of all the members of the several orchestras which played at its establishment within the meaning of the Social Security Act of 1935, and it is therefore subject to the excise tax imposed by that Act. Accordingly, I make the following

### Conclusions of Law:

1. The plaintiff was the employer of both the leaders and musicians of the several orchestras which played at the General Wayne Inn during the taxable period in question, within the meaning of § 804 of the Social Security Act of 1935, and was, accordingly, subject to the tax imposed by that Act.

2. Judgment is hereby entered for the defendant.