**HIRSCH et al. v. ROTHENSIES.**
Civil Action No. 3168.

District Court, E. D. Pennsylvania.
July 14, 1944.

Sylvan H. Hirsch, Joseph S. Kleinbard, and Philip Sterling, all of Philadelphia, Pa., for plaintiffs.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Robert H. Reynolds, Jr., Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for the United States.

KALODNER, District Judge.

This is a suit to recover $1,573.26, plus statutory interest, paid as additional taxes and interest under the provisions of Title VIII of the Social Security Act 1935, Sec. 801 et seq., 49 Stat. 636, 42 U.S.C.A. § 1001 et seq., and of Title IX of that Act, Sec. 901 et seq., 49 Stat. 639, 42 U.S.C.A. § 1101 et seq. These provisions are incorporated into the Internal Revenue Code as Chapters 9, subc. A (Insurance Contributions) and 9, subc. C (Unemployment Compensation), 26 U.S.C.A. Int.Rev.Code, § 1400 et seq., and Sec. 1600 et seq., respectively. The action arose as a result of the determination by the Commissioner of Internal Revenue that the persons upon whom the taxes involved were paid' were employees of the plaintiffs within the meaning of the above statutes.

A jury trial was waived, and the case was submitted upon the pleadings and additional testimony. Accordingly, I make the following

### Findings of Fact

1. The plaintiffs, Louis A. Hirsch, Julius Weintraub, James Weintraub and Meyer Weintraub, co-partners trading as Hirsch, Weintraub & Co., were engaged in the business of manufacturing uniforms in the city of Philadelphia from 1906 to December 31, 1939, at which time said firm was dissolved.

2. James Weintraub, Julius Weintraub, Meyer Weintraub and David M. Weintraub, co-partners, trading as Weintraub Brothers

& Company, is the successor firm to Hirsch, Weintraub and Co. and has been engaged in the business of manufacturing uniforms from January 1, 1940, to the present day.

3. Both plaintiff firms found it necessary from time to time to have their surplus work done by outside contractors. At various times, they have used from eight to ten contractors. The plaintiffs employ from 300 to 350 persons in their own plant.

4. One of the contractors to whom the plaintiffs gave their surplus work was Eugene Moccio. He was the plaintiffs' felling contractor. Felling consists principally of sewing the sleeve into the shoulder of a coat.

5. In 1942, the Collector of Internal Revenue assessed both plaintiff firms for additional unemployment taxes and additional insurance contributions taxes under Titles VIII and IX of the Social Security Act on the ground that Moccio was an employee of the plaintiffs, and that homeworkers employed by Moccio to do the felling were also employees of the plaintiffs.

6. On September 29, 1942, the plaintiff firm Weintraub Brothers & Company paid, under protest, to the Collector of Internal Revenue $333.42 representing additional insurance contributions taxes for the years 1940 and 1941 assessed under the provisions of Chapter 9A of the Internal Revenue Code (Federal Insurance Contributions Act); on the same day said company paid, also under protest, to the Collector of Internal Revenue $490.45, representing additional unemployment taxes and interest thereon for the years 1940 and 1941 assessed under Chapter 9C of the Internal Revenue Code (Federal Unemployment Tax Act).

7. On October 7, 1942, the plaintiff firm Hirsch, Weintraub & Company paid, under protest, to the Collector of Internal Revenue $282.75, representing additional insurance contributions, taxes and interest thereon for the period July 1, 1937, to December 31, 1939, assessed under Title VIII of the Social Security Act and Chapter 9A of the Internal Revenue Code; on the same day said company paid, also under protest, to the Collector of Internal Revenue $466.64, representing federal unemployment taxes and interest thereon for the years 1937, 1938 and 1939, assessed under Title IX of the Social Security Act and Chapter 9C of the Internal Revenue Code.

8. The plaintiff firms filed claims for refund with the Collector of Internal Revenue covering the sums paid as set forth in the preceding paragraphs. Said claims for refunds were properly filed within the time limit prescribed by the applicable statute.

9. The Collector of Internal Revenue has denied the plaintiffs' claims for refund, and this suit has been brought to recover said sums with interest.

10. In 1930 Moccio approached the plaintiffs and requested that he be given their surplus felling. The plaintiffs did give Moccio their surplus felling and Moccio continued to do the surplus felling for the plaintiffs until approximately one year ago.

11. At the time that the arrangement was made with Moccio to do the plaintiffs' surplus felling, a flat price or lump sum per garment was fixed, which the parties agreed should cover Moccio's entire compensation in connection therewith. This price varied from time to time, as a result of bargaining between the parties, and depended upon the type garment to be felled and also upon what other felling contractors would charge for similar work under current market conditions.

12. There was no agreement that Moccio should receive any specific number of garments to be felled and the number of coats delivered to him varied from time to time, depending upon how busy the plaintiffs were. At times he would receive twenty-five garments per day; at other times as many as seventy-five garments per day. There were times when he received none.

13. The garments and padding were taken by Moccio from the plaintiffs' plant and delivered by Moccio in his automobile to various homeworkers who lived in his neighborhood. They did the work, Moccio collected the finished garments from them in his automobile, and then delivered them to the plaintiffs' plant.

14. The homeworkers were women, mostly housewives, who did this work in the time they could spare from their household duties.

15. The plaintiffs did not know who the homeworkers were; they did not have anything to do with the hiring or firing of the homeworkers; they did not supervise or control in any manner whatsoever the per-

formance of the felling operation by the homeworkers. The homeworkers were selected by Moccio.

16. Neither Moccio nor the homeworkers were given mandatory directions as to the manner and means of accomplishing the work.

17. The plaintiffs did not furnish any of the tools or equipment required in the felling operation. Moccio furnished and paid for all of the thread and the needles that were required.

18. Moccio paid his homeworkers directly. The amounts paid to them were fixed by arrangements between Moccio and the homeworkers. The plaintiffs did not know how much he paid them, nor were they concerned with their compensation.

19. Moccio did not account to the plaintiffs for the sums he expended for labor, material and other expenses in connection with the felling operation. The dealings between Moccio and the plaintiffs were handled in precisely the same manner as the dealings between plaintiffs and their other contractors. Moccio in all respects conducted a separate, independent business and his profit from this business was represented by the difference between the amount he was paid by the plaintiffs and the expenses he incurred in connection with the felling, including not only the amounts paid to his homeworkers, but the cost of materials, and his expenses in operating his automobile.

20. Upon the return of the garments to plaintiffs' plant by Moccio, they were inspected. If any were found to be defective, Moccio was required to have the necessary corrections made, and in most cases, this was done by the home workers. However, in cases where the corrections were minor, requiring only a few stitches, Moccio would make the corrections in the plaintiffs' plant. No extra remuneration was paid to Moccio for the corrections, as he was required to deliver a completed garment in accordance with the specifications for the flat price agreed upon. Plaintiffs handled this in precisely the same manner as they did with all their other contractors.

21. For several years after Moccio began to do the felling work for the plaintiffs, he also did work for other clothing manufacturers. The testimony shows that he performed felling for at least two other clothing manufacturers, namely, Sidmore Uniform Company and Maimon. In later years, Moccio handled felling exclusively for the plaintiffs. The plaintiffs did not require him to handle their work exclusively, and it appears that although Moccio had the time to handle other felling work, he did not seek it.

22. The plaintiffs exercised no control over the hours of work of either Moccio or his employees; Moccio came and went as he pleased.

23. Early in March, 1942, the plaintiffs learned for the first time that Moccio had not been paying Social Security and Unemployment taxes for his employees. When a demand was made upon the plaintiffs for the payment of these taxes, they persuaded Moccio to go to Fernald & Co., a firm of accountants, to make arrangements to have the payroll taxes deducted from the sums paid to him by the plaintiffs. Moccio paid the accountants for this service. From that time on, Social Security taxes were paid by Moccio on the compensation received by the homeworkers.

24. At no time were any of Moccio's homeworkers on the plaintiffs' payroll. Plaintiffs did not provide Workmen's Compensation Insurance for them, nor did the plaintiffs pay any of the payroll taxes for these employees or Moccio.

25. Moccio held a "contractor's industrial homework permit" from the Pennsylvania Department of Labor, which permitted him to employ homeworkers, and plaintiffs held an employer's permit.

## Discussion

The precise question is whether Moccio and the homeworkers were employees of the plaintiffs during the tax periods involved within the meaning of Sections 811 (b) and 907(c) of the Social Security Act, and Sections 1426(b) and 1607(c) of the Internal Revenue Code, 26 U.S.C.A.[1] If Moccio was an employee of the plaintiffs, then the tax was properly assessed and collected; if Moccio was an independent contractor, the plaintiffs are entitled to recover.

---

[1] The provisions of these two sections are substantially the same. Sec. 1426 (b) reads: "The term 'employment' means any service performed * * * of whatever nature * * * by an employee for the person employing him * * *." There are certain exceptions and qualifications not relevant to this case.

96

The term "employment" as used in Titles VIII and IX of the Social Security Act and the Internal Revenue Code admittedly might be capable of a very broad interpretation. Nevertheless, the cases on this subject consistently hold that the term should receive the ordinary construction as at common-law. Texas Company v. Higgins, D.C.S.D.N.Y.,1940, 32 F.Supp. 428, affirmed, 2 Cir., 1941, 118 F.2d 636; Indian Refining Co. v. Dallman, D.C. S.D.Ill., 1940, 31 F.Supp. 455, affirmed 7 Cir., 1941, 119 F.2d 417; Burruss v. Early, D.C.W.D.Va., 1942, 44 F.Supp. 21; Aberdeen Aerie No. 24 v. United States, D.C. W.D.Wash., 1943, 50 F.Supp. 734; Spirella Co. v. McGowan, D.C.W.D.N.Y., 1943, 52 F.Supp. 302. These cases recognize that the Social Security Act does not extend to cases where persons are performing services as independent contractors. And contrast Jones v. Goodson, 10 Cir., 1941, 121 F.2d 176; and Williams v. United States, 7 Cir., 1942, 126 F.2d 129, certiorari denied, 1942, 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527; with Combined Metals Reduction Co. v. United States. D.C.D.Utah, 1943, 53 F. Supp. 739; and Kentucky Cottage Industries v. Glenn, D.C.W.D.Ky., 1941, 39 F. Supp. 642; and see Walling v. American Needlecrafts, D.C.W.D.Ky., 1942, 46 F. Supp. 16, 22.

This view is further supported by the Treasury Regulations. The current regulations under Title VIII are T.R. 106, Sec. 402.204, and under Title IX, T.R. 107, Sec. 403.204. These regulations are substantially the same as the prior regulations, T.R. 91, Art. 3 and T.R. 90, Art. 205, respectively, and since the latter are sufficiently set out in Burruss v. Early, supra, 44 F.Supp. at pages 26 and 27, it is unnecessary to repeat them here. As pointed out in that case, these regulations, although not binding on the court, are entitled to respectful consideration, and should be followed unless unreasonable or inconsistent with the statute. Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345. The matter is adequately disposed of in Radio City Music Hall Corp. v. United States, 2 Cir., 1943, 135 F.2d 715, at page 717, where Judge Hand stated:

"We accept Article 3 of Regulation 91 as an authoritative definition of the distinction between an 'employee' and an 'independent contractor': it is really no more than a gloss upon the definition contained in Justice Gray's opinion in Singer Manufacturing Co. v. Rahn, 132 U.S. 518, 523, 10 S.Ct. 175, 33 L.Ed. 440. We assumed its conclusiveness in Texas Company v. Higgins, supra, [2 Cir.], 118 F.2d 636, 638, and so have the Tenth Circuit (Jones v. Goodson, 121 F.2d 176, 179) and the Seventh (Williams v. United States, 126 F. 2d 129, 132). The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said, although the regulation redundantly elaborated it."

To the Second, Seventh, and Tenth Circuits may be added the First: Deecy Products Co. v. Welch, 1941, 124 F.2d 592, 598, 139 A.L.R. 916; the Ninth: Anglim v. Empire Star Mines Co., 1942, 129 F.2d 914; and the Fifth: American Oil Co. v. Fly, 1943, 135 F.2d 491, 147 A.L.R. 824, 829. In the American Oil case the court pointed out, 135 F.2d at page 493, that:

"Many salesmen, especially those on commission, were not included as employees under this definition (in T.R. 91, Arts. 2 and 3). In 1939 an attempt was made in Congress to amend the Act so as to include them. The House of Representatives passed the amendment, but it was defeated in the Senate, and in conference.[2] The amendment in terms proposed a departure from the master and servant test; its defeat must be taken as showing Congressional acquiescence in that test. The definition of employee made in the Regulations must stand."

The critical question as to whether a master-servant relationship exists, so well known to common law, is stated clearly in part of Regulation 91, Art. 3, as being whether "the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to *what* shall be done but *how* it shall be done."

[2] The reference is to Conference Report of Representative Doughton, Aug. 4, 1939, on H. R. 6635, p. 14.

On the record in this case, I find no such evidence of control over Moccio by plaintiffs in his methods of operation or in the performance of his work that would lead to a conclusion that a master-servant relationship existed; on the contrary, the facts fully support plaintiffs' contention that Moccio was an independent contractor. Moccio was paid a flat rate per garment felled. Out of this he paid all the expenses connected with the work he undertook to do. He supplied his own automobile, gas, and other incidental expenses; he paid the homeworkers and supplied them with needles and thread. When the results of his work were unsatisfactory, that is, when a garment did not pass inspection, the loss fell on him. At no time did he furnish the plaintiffs with a breakdown or itemized list of his expenses, or account for the funds received; the difference between his expenses and the amount received from the plaintiffs constituted his earnings, or more exactly, his "profits." It is true Moccio, on occasion, told plaintiffs that his homeworkers wanted more money or that his expenses were higher, and as a consequence, a new rate per garment was agreed upon, but this is not inconsistent with a continuing independent contractor relationship. The plaintiffs, of course, knew Moccio used homeworkers, but such workers were not carried on their payroll; nor did plaintiffs know the names of the homeworkers, nor how many Moccio employed, nor their rate of pay. Moreover, they had no say in these matters at all.

Strikingly pertinent to the situation here is the statement of the Court in Williams v. United States, supra, 126 F.2d at page 133:

"We have already concluded * * * that the establishments had no right to hire or discharge members of the orchestra. To our mind, this circumstance alone comes near being decisive. It is difficult to conceive of an employer-employee relationship without such a right on the part of the employer. It is equally inconceivable that such right should rest solely in the hands of the employee. Without this right there could be no effective control by an employer. * * *"

The Government further asserts that plaintiffs directed and instructed Moccio as to the sewing processes. The record shows, however, that the garments and padding were given to Moccio and he was expected to return them properly felled.

Plaintiffs were interested in results, not how Moccio accomplished them, and apparently Moccio was never asked whether he knew what to do or how to go about doing the work. When Moccio did not know what was to be felled, or did not know how to go about the process he would ask the foreman; the foreman would then tell him what to fell, or if Moccio desired, would illustrate the process. Directions as to what must be felled constitute directions as to results, but directions as to the sewing process involved are instructions as to the manner and means of accomplishing the results. However, it does not appear here that the instructions given by the foreman were mandatory. It would be more fitting to say the instructions were "illustrations" or "demonstrations" of how Moccio could go about the job in order to satisfy the inspection. Obviously, plaintiffs would not be unwilling to show Moccio how to accomplish the desired results satisfactorily. Even if plaintiffs furnished Moccio with specifications for doing the work, it would hardly be different from a case where a general contractor is given detailed plans and specifications for constructing a building. See Kentucky Cottage Industries, Inc., v. Glenn, supra; and Walling v. American Needlecrafts, supra.

Finally, the many minor characteristics of an employer-employee relationship are lacking here: Moccio was not furnished the tools of the trade; he was not given a place to work; he had no fixed hours, but took only plaintiffs' surplus work; and he had the right to take work from others.

On final analysis, Moccio was in a position to receive profit from the work of others; it was he who had control over the manner and means of accomplishing the work and it rested with the plaintiffs only to accept or reject the finished product tendered by him. The facts inevitably lead to the conclusion that Moccio was an independent contractor.

Accordingly, I state the following:

### Conclusions of Law

1. During the payroll periods involved, Eugene Moccio was an independent contractor and the persons engaged by him to do the felling on garments furnished by the plaintiffs were not employees of the plaintiffs.

2. The taxes in question were improperly assessed and collected from the plaintiffs.

3. The plaintiffs are entitled to a judgment in their favor for the full amount of the taxes paid by them together with statutory interest thereon.

An order may be submitted in accordance with this opinion.