**ABERDEEN AERIE NO. 24 OF FRATER-NAL ORDER OF EAGLES v. UNIT-ED STATES.**

**BALLARD AERIE NO. 172 OF FRATER-NAL ORDER OF EAGLES v. SAME.**

**SEATTLE AERIE NO. 1 OF FRATER-NAL ORDER OF EAGLES v. SQUIRE,** Collector of Internal Revenue.
Civil Actions Nos. 459, 608, 466.

District Court, W. D. Washington, S. D.
July 9, 1943.

Cornelius C. Chavelle and Chavelle & Chavelle, all of Seattle, Wash., for plaintiffs.

J. Charles Dennis, U. S. Atty., Harry Sager, Asst. U. S. Atty., and Thomas R. Winter, Special Representative to General Counsel, Bureau of Internal Revenue, all of Seattle, Wash., for defendant.

LEAVY, District Judge.

These three cases will be considered together for the purpose of disposition, since they all involve a construction of certain parts of Titles VIII and IX of the Social Security Act, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., before its amendment in 1939. The plaintiff in each case is a subordinate Aerie of the Fraternal Order of Eagles, and the defendant is Clark Squire, as Collector of Internal Revenue in this District. The actions are to recover sums assessed by the Government and paid by the plaintiffs.

For convenience, I shall refer to Cause No. 459 as the Aberdeen case; Cause No. 608 as the Ballard case, and Cause No. 466 as the Seattle case.

The specific question presented in the Aberdeen case is whether the Aerie physician, the president, vice president and treasurer, trustees and members of the audit committee, of a subordinate Aerie of the Fraternal Order of Eagles constitute employees under Section 811(b) and Section 1101(a) of the Social Security Act and Section 1426 (b) and (d) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1426(b, d), for the purposes of the tax imposed under Title VIII of the Social Security Act and under the Federal Insurance Contributions Act, 26 U.S.C.A. Int.Rev.Code, § 1400 et seq.

In the Ballard case, the question presented is whether the physician, the treasurer and the trustees of a subordinate Aerie of the Fraternal Order of Eagles, and a musician performing services for the Aerie, constitute employees under Title IX of the Social Security Act and Chapter 9, Subchapter C of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1600 et seq.

It might be noted that in both cases mentioned the questions presented are of first impression, and there is no precedent resting upon a similar set of facts.

In the Seattle case, the question presented is whether members of an orchestra performing services for taxpayer constitute its employees under the provisions of the Social Security Act and Chap. 9, Subchapters A and C of the Internal Revenue Code.

A disposition of the issues raised by these actions involves an interpretation of certain provisions of Titles VIII and IX of the Social Security Act, prior to its amendment in 1939. In each case there is a stipulation on file dealing with the amounts involved for the years in question, and also the individuals or groups on whom tax was paid and refund demanded. The proof submitted was very limited, and heard as to the three cases at the same time.

In order to bring the Aberdeen and Ballard Aeries within the provisions of the Social Security Act prior to amendment, it is necessary to hold that the various officers of these two organizations be considered as employees as distinguished from mere ritualistic officers or independent contractors. If the facts establish the relationship of employer and employee as between these subordinate lodges and their officers, who are chosen in accordance with the provisions of their constitution provided for them by the Grand Aerie, then the actions would have to be dismissed insofar as they involve the Aberdeen and Ballard cases. If, on the other hand, that relationship does not exist, then the plaintiffs should prevail in these two cases, insofar as they

have complied with the laws and regulations involving a refund of taxes erroneously assessed.

In the Seattle case, the issue involves only the question of whether the orchestra that furnished music for dances held at regular intervals was an orchestra supplied by an independent contractor, or whether the orchestra members were employees of the Seattle Aerie.

All three of these organizations are incorporated under the laws of the State of Washington, which specifically provide for the incorporation of fraternal organizations and distinguish them from commercial corporations, and relieve them from the payment of any tax or annual license fees.

With the exception of the musicians employed by the Ballard Aerie, and the orchestra that furnished music for the Seattle Aerie, all of the other individuals involved were essential and required officers of the subordinate Aeries provided for by their constitution. Their duties are enumerated in detail in the constitution, and then it is provided therein what the compensation of certain officers shall be, and with other officers the matter of fixing compensation is left to the discretion of the local Aerie. This compensation, with the exception of the Aerie Physician and Secretary, is a very nominal sum, being as low as 33⅓¢ per month for the Worthy President and Worthy Vice President, and a number of the other officers of the Aerie, who are either elective or appointive, receive a compensation of $1 per month.

The first issue that must be disposed of here involves an interpretation of the word "employee". The Act of Congress itself gives only a most broad and comprehensive definition, and leaves detail to the Treasury Department. That Department, by Article 3, Regulation 91, furnishes a more detailed definition of the term "employee", and then distinguishes between an independent contractor and an employee.

■ There is a great wealth of authority to be found on the question of when one is an employee. No good could come from attempting to analyze in any degree of detail the innumerable cases touching this subject. It does seem to this Court that a very clear statement as to when the relationship of employer and employee exists is found in 35 Am.Jur., Page 445, Sec. 3, Master and Servant, where it is stated: "While it is said that at common law there are four elements which are considered upon the question whether the relationship of master and servant exists,—namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of the control of the servant's conduct,—the really essential element of the relationship is the right of control—the right of one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done."

■ In Deecy Products Co. v. Welch, 124 F.2d 592, 598, 139 A.L.R. 916, a well-considered opinion from the First Circuit, dealing with an interpretation of the provisions of the Social Security Act herein involved, the Court said: "We hold that an employee is one who meets the tests of the more or less established concept of 'the legal relationship of employer and employee' ". We need but cite this case from the First Circuit Court of Appeals to note that the construction and application of the laws herein involved are based upon the accepted tests as enumerated in the quotation from American Jurisprudence.

It is argued by the plaintiffs that the Act, as originally passed by Congress, never intended to include fraternal organizations, and this was established by the very fact that when, by Departmental regulation and interpretation, they were included, Congress immediately clarified the Act by excluding them. The case of Hassett v. Associated Hospital Service Corporation, 125 F.2d 611, 617, from the First Circuit, strongly supports the position taken by the plaintiffs. The Court said: "That the Congress in enacting the Social Security Act, did not expressly exempt corporations operating a nonprofit hospital service plan, does not legitimately warrant the inference that Congress intended such organizations not to be exempt from the act."

I do not feel that it is necessary, in making a disposition of these cases, to decide what the intent of Congress was in enacting the Act, insofar as it involved groups, classes and persons to be exempt, and shall therefore rest my decision entirely upon the question of whether the members of fraternal organizations, as here involved, when occupying official positions, either by election of their fellow members or by appointment of the elected presiding officer, such positions being for a limited term,

usually one year, should be classified as employees and the subordinate lodge itself classified as an employer. This consideration, of course, excludes the issue of the orchestra, and to a degree, that of the Aerie Physician. A determination of this issue, however, becomes important on the question as to whether or not there were eight or more regular employees, as required by law.

Under the stipulations on file herein, and by the admissions of the pleadings and the proof offered at the time of trial, it is clear that all of those involved in the tax levy in the Aberdeen and Ballard cases fall within the class above enumerated; that is, they are all officers of the subordinate Aeries that are strictly and primarily fraternal organizations, having over them a Grand Aerie that provides the Constitution for such subordinate Aeries, and expressly outlines the duties and responsibilities of the elected and appointed officers in connection with the ritualistic work of this fraternal organization. An examination of the Constitution, under which each of the subordinate Aeries here involved operates, readily establishes the fact that it is in no sense a commercial or profit making corporation, and that the sums given to the officers are not intended to be financial remunerations for services, but, at most, would have to be classified as mere honorariums.

■ Being an officer of a subordinate Aerie is a distinction and honor conferred upon the individual by his fellow members, because of ability, faithfulness in observing ritualistic requirements, and a demonstrated belief in the objectives of the fraternity. There is no assured tenure of service beyond the limit of time fixed by the constitution, and the service, under no stretch of imagination, can be considered as a means of procuring a livelihood, or being made the basis for the payment of unemployment compensation. It seems to me that it has required a strict and even strained construction of both the Act and the regulations to bring the officers of these subordinate Aeries within the provisions thereof. I hold, therefore, that all of the officers of these subordinate Aeries are ritualistic officers, and as such are not included within the terms and provisions of Titles VIII and IX of the Social Security Act of 1935, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq.

■ The musician employed by the Ballard Aerie, who received a compensation of $2.50 per meeting, is not a ritualistic officer, as provided by the constitution, and, at first blush, it might appear that he should be included under the provisions of the Act, but an analysis of the service that he performs, being for a period of an hour or two each week, and a requirement that he be a member of the fraternity, readily establishes the fact that his services are casual and incidental insofar as the fraternity is concerned, and would be exempt under the provisions of Title VIII, Sec. 811 (b) (3) Social Security Act 1935.

■ I have already found that the Aerie Physician is a ritualistic officer, and that, of itself, would exempt him from inclusion herein, but he would likewise have to be excluded as an employee under the accepted definition of that term, because it is admitted that his services, aside from his ritualistic duties, are purely professional, and are rendered entirely exclusive of any control being exercised by the subordinate Aerie; every detail of the professional services rendered by the Physician to the members of the fraternity or their families, is wholly within the exercise of discretion by the Physician, and the relationship of physician and patient is clearly established when a member of the fraternity or his family accepts the services of the Physician. The responsibilities and immunities that go with that relationship exist in all instances in the treatment supplied by the Physician to the patient. His status becomes that of any other private physician. The Physician must, therefore, be considered as excluded from the provisions of the Act here involved upon the ground: first, that he is a ritualistic officer; second, that his services are purely professional and excluded by Departmental Regulation; and, third, that he is an independent contractor.

■ We come now to the last issue involved herein, and that is the employment of an orchestra by the Seattle Aerie.

I shall not endeavor to enumerate all of the elements that exist here, but the undisputed facts and admissions clearly establish the contention of the plaintiff that the orchestras, during the years here involved, supplied music through an independent contractor. It is enough to say that the Aerie itself:

1. Exercised no right to direct the performance of any individual member of the orchestra.

2. Had nothing to do with the selection of any individual member.

3. Was under no legal obligation to pay any wage or salary to any individual member.

4. Could not discharge any individual member.

5. Did not even direct the type of music to be played nor furnish such music.

6. Did not furnish any of the instruments, aside from a piano.

The facts further disclose that:

1. The orchestra operated under the name of its leader.

2. Its services were contracted for with the leader.

3. All payment for such services was made to the leader.

The leader was not an employee of the Seattle Aerie, but his status was quite clearly that of an independent contractor, and I so find.

The case of Williams v. United States, 126 F.2d 129, is decisive of this issue. This case comes from the Seventh Circuit, and reverses the lower court in its decision. The principle announced in this case has been approved in this Circuit, the Ninth, in the case of Anglim v. Empire Star Mines Co., 129 F.2d 914, and these decisions are binding upon this Court upon this issue, and make the law of this case. The facts in the Williams case, supporting the contention that he was an independent contractor, are not nearly so strong as in the case at bar, because there the services were being performed for the use and benefit of strictly commercial organizations, as distinguished from a fraternal organization here.

It was said in the Williams case [126 F.2d 131], supra: "We think the record discloses without question that the right to hire and discharge was the sole prerogative of the plaintiff". In this case that right vested solely in the leader of the orchestra and not in the Seattle Aerie. The Treasury regulations under which these assessments are made, Art. 3, Reg. 91, provide: "In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work, and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not, as to such services, an employee." The record

as made in this case clearly brings the orchestra that furnished music to the Seattle Aerie within this definition.

The government makes much of the contention that the union scale was the standard by which compensation was paid to the orchestra, the leader receiving ten per cent more than the individual employees. That was established in this case, but, of itself, it can not be the controlling factor in the establishment of the relationship of employer and employee.

I have endeavored to cover the issues that have been raised in this group of cases as fully as is necessary to permit the preparation and submission of findings of fact and conclusions of law and a decree, and I have refrained from citation of numerous authorities or an analysis of the many authorities that have been presented in the course of the trial, because it would unduly extend this opinion, and serve no useful purpose to either of the parties involved.