## LOS ANGELES ATHLETIC CLUB v. UNITED STATES.

### No. 2099–M.

District Court, S. D. California, Central Division.

Feb. 5, 1944.

David E. Hinckle, of Los Angeles, Cal., for plaintiff.

Charles H. Carr, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

McCORMICK, District Judge.

This is an action to recover the sum of $1,546.60 paid to the United States as Social Security taxes during the period January 1, 1936 to September 30, 1940. Plaintiff contends that it was not an employer within the meaning of Titles VIII and IX of the Social Security Act, hereinafter called the Act, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq., under which Act the taxes in question were assessed. The amount of the payment is not controverted and the issues herein are those bearing upon the relationship between the club and orchestra members. The paramount and crucial question for decision is whether or not within the meaning of applicable laws of the United States the relation of employer and employee existed at the applicable times between plaintiff and the individual musicians in orchestra playing at social events occurring in club activities.

Plaintiff during the applicable period operated five social and athletic clubs and one hotel, namely, the Los Angeles Athletic Club, the Hollywood Athletic Club, the Santa Monica Deauville Club, the Pacific Coast Club, the Riviera Country Club and the Hermosa Biltmore Hotel. The hotel was open to the public, while the facilities of the five clubs were restricted to members and their guests.

At various times plaintiff for the benefit of its members and guests gave dinners and dances at its clubs or at its hotel. Having no musicians on its regular staff of employees, plaintiff's individual club or hotel manager contacted orchestra leaders, or occasionally a booking agency, to engage an orchestra suitable for the specified event. If the leader was contacted or if he solicited the employment at his own instance, the manager of the club or hotel negotiated directly with him and the fixed sum agreed upon for orchestral service was dependent upon the size of the orchestra and the hours it was required to play. Seldom, if ever, were written contracts entered into, and if a music agency secured the orchestra it regularly charged plaintiff a fee. Between January 1, 1936 and September 30, 1940, 103 orchestras, varying in size from 6 to 10 members, played for plaintiff on 868 occasions, and if not already existent at the time the agreements to play for plaintiff were made, orchestras were assembled for the events, respectively, by the various leaders from among musicians of their own acquaintance who were free to play at the specified time. No orchestra ever worked exclusively for plaintiff and the orchestras or their members were privileged to work any other time and place and for the public so long as such engagement did not conflict with the arrangement made by their leader or the agency with plaintiff. A majority of the orchestras during the period here involved played but once or twice for the establishment, although one orchestra did play on 137 occasions during the approximate five years involved in this action.

Section 804 of the Social Security Act, 42 U.S.C.A. § 1004, provides that every employer shall pay an excise tax with re-

spect to having individuals in his employ, equal to a designated percentage of the wages paid by the employer after December 31, 1936, with respect to employment (as defined in Section 811 of the Social Security Act), after such date. Section 811 of the Act, 42 U.S.C.A. § 1011(b), provides that the term "employment" means any service, of whatever nature, performed within the United States by an employee for his employer, excepting certain classes of employment which are exempt and which are not here applicable.

Sections 901 and 907 of the Act, 42 U. S.C.A. §§ 1101 and 1107, provide in effect that every employer of eight or more persons shall for the purposes of unemployment compensation on and after January 1, 1936, pay for each calendar year an excise tax with respect to having individuals in his employ, equal to a designated percentage of the total wages payable by him with respect to employment during such calendar year; and that the term "employment" means any service, of whatever nature, performed within the United States by an employee for his employer, except certain types of employment not herein applicable.

The tax imposed is an excise tax and it has been sustained as a tax levied upon the privilege of establishing and maintaining the relationship of employer and employee. Steward Machine Co. v. Davis, Collector, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; Helvering, Commissioner of Internal Revenue, et al. v. Davis, 301 U.S. 619, 672, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319; Jones, Collector of Internal Revenue, v. Goodson et al., 10 Cir., 121 F.2d 176. The tax is confined to those cases where such relationship exists. Anglim, Collector, etc., v. Empire Star Mines Co., Ltd., 9 Cir., 129 F.2d 914; Jones, Collector of Internal Revenue, v. Goodson et al., supra; Texas Company v. Higgins, 2 Cir., 118 F.2d 636; Burruss et al. v. Early, Collector of Internal Revenue, D.C.W.D.Va., 44 F.Supp. 21. Neither the word "employer" nor the word "employee" is specifically defined in either of the titles of the Act involved in this action. In the regulations promulgated under the authority of the Act both terms are defined and interpreted by the Treasury Department which is charged with administration of the taxing features of the Act. Article 3 of Treasury Regulations 91, under Title VIII of the Act, 42 U.S.C.A. § 1001 et seq.; and almost identically worded Article 205 of Treasury Regulations 90, under Title IX of the Act, 42 U.S.C.A. § 1101 et seq.

■ The above regulations do no more than gloss upon familiar common law principles and judicial pronouncements respecting employer-employee relationship. Such relationship exists when the employer has the right to direct and control the manner and method in which the work shall be done as well as the result to be accomplished. The contradistinctive relationship between persons where one renders or performs services for another is that of an independent contractor. It exists where one engages to perform some service for another according to his own method and manner, free from direction and control of the other in matters relating to the performance of the work, except as to the ultimate result or product. The line of separation between the two relationships is factual and is dependent upon the degree of direction and control that may properly be exercised by the employer. In employer-employee status direction and control cover both the method and the manner of doing the work as well as the ultimate result; while in an independent contractor situation direction and control are limited to the result. Singer Mfg. Co. v. Rahn, 132 U.S. 518, 10 S.Ct. 175, 33 L. Ed. 440; Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; Jones, Collector of Internal Revenue, v. Goodson et al., supra; In re Ten Eyck Co., Inc., D.C.N.D.N.Y., 41 F.Supp. 375; 39 C.J. 35. Moreover, inasmuch as the right to control and direct the method and manner of doing the work necessarily involves the power to discharge, the existence or absence of this right on the part of the employer is a factor which strongly indicates the relationship involved in different situations. Williams v. United States, 7 Cir., 126 F.2d 129; Jones, Collector, v. Goodson, supra; 39 C.J. 35, 35 Am.Jur. 445.

■ It is to be noted that notwithstanding the social objectives of the Act, the words "employment," "employer" and "employee" as used therein are used in their ordinary sense and are intended to describe the conventional relationship of employer and employee according to the principles of the common law. Anglim v. Empire Star Mines Co., Ltd., supra; Williams v. U. S., supra; Texas Company v. Higgins, supra; Kentucky Cottage Industries v.

Glenn, Collector, D.C.W.D.Ky., 39 F.Supp. 642. The ordinary and generally accepted meaning of language used in the Regulations cannot be ignored in the ascertainment by the court of the proper classification of the relationship existing between the plaintiff and the members of the various orchestras during the times applicable in this action and the quality of the relationship under consideration is to be judged by the presence or absence of no single evidentiary factor, but by an overall view. Anglim v. Empire Star Mines Co., Ltd., supra.

The evidence in this case discloses that all hiring and discharging was done by the individual orchestra leaders without first consulting plaintiff, who never assumed or believed it had this prerogative. At no time during the period involved did plaintiff discuss or have negotiations with respect to employment with individual members of the orchestra, or "side men," as they are known to the trade; nor did it ever maintain a member on its payroll. And it is significant in considering the question for decision that Article X, section 29 of the constitution, by-laws and standing resolutions of the American Federation of Musicians provides: "Members of the Federation are only permitted to accept, solicit or negotiate engagements to play in bands or orchestras from members who contract to furnish bands or orchestras, never from the employers or the agents of such to whom the band or orchestra is furnished, * * *." Thus it would appear in those instances of union personnel orchestras the "side men" were prohibited from accepting engagements with the establishment or their agents, and it would seem to follow that in all engagements of union musicians no relationship of employer-employee could exist between plaintiff and such musicians.

Ordinarily plaintiff left to the leader the choice of musical instruments of the orchestra and the selection of the music for the event. No music scores were ever furnished by the plaintiff, the leaders having their own libraries of music. Nor did plaintiff furnish the musicians with instruments, except a piano which constituted a portion of its regular furnishings at the clubs and the hotel. The musicians always furnished their own dress.

The methods and details of the orchestra's performance were left principally to the leader's direction, although requests for particular selections were sometimes made by a club representative, a member, or his guests, and these were usually complied with. The leader hired and fired the "side men" without consulting plaintiff. The orchestras arranged themselves as they saw fit and seldom did plaintiff impose retrictions upon the "side men" or their leaders with respect to their conduct, nor were the members of the orchestras compelled to abide by the rules of conduct prescribed for the establishment's regular employees.

The orchestra's hours were always agreed upon with the leaders prior to the actual engagement. If it appeared desirable to play overtime plaintiff's managers were compelled to first arrange the matter with the individual leader. If an occasional floor show or novelty was presented, the leader and entertainers customarily arranged this among themselves. In one instance a club presented a series of "hobby horse races" which did require a rehearsal, but excluding this instance, the evidence fails to disclose that plaintiff ever required an orchestra to rehearse.

Payment for orchestral service was usually made in a single amount by check or from "petty cash" to the leader or the agency acquiring the orchestra. Plaintiff never specified the amount to be paid to each "side man" although it was sometimes aware that the total sums paid were equivalent to the union scale for the "side men" and their leader. The Government apparently urges that the club's occasional knowledge of this fact and payment of the union scale tends to indicate the employer-employee relationship. However, in view of the fact that the evidence reveals that only about one-third of the orchestras were union and that apparently as adverted to the constitution and by-laws of the Federation prohibit the questioned relationship it would appear that this evidence is of no force in establishing an employer-employee relationship in this action.

■ According to the testimony of several witnesses for defendant, plaintiff at times performed acts now relied upon to show control. On one or two occasions plaintiff specified that the musicians wear formal attire to conform to the nature of the event. In another instance plaintiff specified the type of instruments it desired in the orchestra, and further suggested that the musicians spread out upon the bandstand to create the appearance of

706

a larger orchestra. In some instances plaintiff requested that certain selections be played or that the musicians increase or decrease their volume. On several occasions the musicians were instructed not to linger about the bar and were restricted to the premises. But these and other minor instances fail to establish the relationship of employer-employee. Control so casual, sporadic, minor in degree and indefinite in its extent must give way to acts and conduct which by reason of their continuity in practice lead to an opposite result. What appears here to be control can be more aptly described as requests that certain things be done, and the mere fact that the requests may have been complied with does not prove the right of control in the establishments of plaintiff. Williams v. United States, supra. Viewing the evidence in its entirety it is clear that any direction exercised by the plaintiff falls short of the right of control necessary to constitute plaintiff the employer of the orchestra members.

 Moreover, it is established that where one is performing work in which another is interested the latter may exercise a certain measure of control for a definite and restricted purpose without acquiring the responsibilities of an employer. Some such supervision is inherent in any joint undertaking and does not necessarily color the entire relationship. Radio City Music Hall Corp. v. United States, supra. See, also, Western Indemnity Co. v. Pillsbury, 172 Cal. 807, 159 P. 721; People v. Grier, 53 Cal.App.2d Supp. 841, 128 P.2d 207; 13 Cal.Jur. 1024.

In reaching the conclusion that plaintiff is entitled under the record to the relief prayed for we are not unmindful of the wholesome purposes and social objectives of the Act. Each case, however, must, under the present state of the law, be decided upon its own peculiar set of facts.

We conclude that the preponderance of all the evidence disproves the existence of an employer-employee relationship between plaintiff and the musicians of orchestras rendering services in establishments of plaintiff during the period from January 1, 1936 and ending September 30, 1940.

Findings of fact, conclusions of law and judgment ordered for plaintiff upon the issues of the complaint and answer and as prayed for in the complaint.

Attorney for plaintiff will prepare, serve and present such findings of fact, conclusions of law and judgment within ten days from notice of this memorandum opinion pursuant to Rule 7 of this court.