**BARTELS et al. v. BIRMINGHAM, Collector of Internal Revenue (WILLIAMS et al., Intervenors).**

**GEER et al. v. BIRMINGHAM, Collector of Internal Revenue.**

Nos. 294, 328.

District Court, S. D. Iowa, Central Division.

Jan. 5, 1945.

Clyde B. Charlton and Thomas B. Roberts (of Brammer, Brody, Charlton & Parker), both of Des Moines, Iowa, for claimants.

Harold D. Cohen, Sp. Asst. to the Atty. Gen., Cloid I. Level, Asst. U. S. Atty., of Des Moines, Iowa, and Maurice F. Donegan, U. S. Atty., of Davenport, Iowa, for the United States.

Joseph A. Padway and Robert A. Wilson, both of Washington, D. C., and Chauncey A. Weaver, of Des Moines, Iowa, for intervenors.

DEWEY, District Judge.

The above entitled actions came on for hearing on their merits on December 11, 1944, at Des Moines. Evidence was introduced, arguments had and the cases submitted on their merits, with additional written briefs.

The two actions were consolidated for trial and one opinion and one findings of fact will be applicable to each case.

The actions were brought by certain operators of ballrooms in Iowa against the Collector of Internal Revenue to recover taxes paid to him under the Federal Insurance Contributions Act, 26 U.S.C.A. Int. Rev.Code, § 1400 et seq., and the Federal Unemployment Tax Act, 26 U.S.C.A.Int. Rev.Code § 1600 et seq., upon a claim by the Commissioner of Internal Revenue that such operators were the employers of certain orchestra leaders and their "sidemen" (members of the orchestras) on the dates of their respective engagements.

Such orchestras and their leaders and the dates of their respective engagements for the plaintiffs, in civil action No. 294, are as follows:

| Griff Williams and his orchestra | Sept. 1, 1941. |
|---|---|
| Bill Carlson and his orchestra | Aug. 17, 1941. |
| Tiny Hill and his orchestra | Sept. 28, 1941. |
| Boyd Raeburn and his orchestra | Oct. 5, 1941. |
| Buddy Fisher and his orchestra | Nov. 23, 1941. |
| Paul Moorhead and his orchestra | Jan. 18, 1942. |

Such orchestras and their leaders and the dates of their respective engagements for the plaintiffs in civil action No. 328, are as follows:

| Al Menke and his orchestra | Oct. 12, 18, 1941. Nov. 8, 26, 1941. Nov. 26, 1942. |
|---|---|
| Les Hartman and his orchestra | Feb. 5, March 5, Apr. 2, May 7, June 4, July 2, Aug. 6, Sept. 3 & Oct. 1, 1942. |
| Jimmy Barnett and his orchestra | Jan. 1, 5, 24, Apr. 25, June 16, July 2, 3, 4, Aug. 1, 8, Sept. 12, Oct. 4, Nov. 7, 14, 15, 17, Dec. 5, 6 & 22, all in 1942. |
| Paul Moorhead and his orchestra | Feb. 17, 22, March 21, 22, Apr. 18, May 2, 9, 16, 28 & 31, June 2, 30, July 11, 12, 14, 16, Oct. 10, 11, 12, 24, all in 1942. |
| Blue Barron and his orchestra | Aug. 26, 1941, & July 4, 5, and 9, 1942. |
| Doc Lawson and his orchestra | July 4, 1942. |

In civil action No. 294 the leaders of the orchestras have intervened and filed answers designating themselves as defendants.

Plaintiffs claim that they were not the employers of the leaders and the sidemen within the meaning of the taxing statutes, but that each leader was an independent contractor and the sidemen were solely his employees.

■ It is established by the taxing statutes, the common law and the regulations of the Commissioner of Internal Revenue that in order to constitute an employment within the meaning of the taxing acts the legal relationship of employer-employee must exist between the person for whom the services are performed and the individual who performed them and that an independent contractor and his men are not such employees. Sec. 1001 et seq., 42 U.S. C.A. §§ 1400, 1410, 1600, 1607, 26 U.S.C.A. Int.Rev.Code; Sec. 402.204, Internal Revenue Regulation 106; Texas Company v. Higgins, 2 Cir., 118 F.2d 636; Indian Refining Co. v. Dallman, 7 Cir., 119 F.2d 417; Williams v. United States, 7 Cir., 126 F.2d 129; Anglim, Collector, v. Empire Star Mines, 9 Cir., 129 F.2d 914; Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715; American Oil Co. v. Fly, 6 Cir., 135 F.2d 491; Fahs v. Orange State Oil Co., 5 Cir., 138 F.2d 743; Glenn v. Beard, 6 Cir., 141 F.2d 376; United States v. Mutual Trucking Co., 6 Cir., 141 F.2d 655; Jones v. Goodson, 10 Cir., 121 F.2d 176.

In the last cited case, 121 F.2d 176, a definition of what constitutes an independent contractor is set forth, page 179, as follows: "Little difficulty has been encountered in defining in the abstract the relationship of master and servant and that of an independent contractor, and in drawing the line of distinction between the two. The relationship of master and servant exists where the employer has the right to direct and control the method and manner in which the work shall be done and the result to be accomplished, while an independent contractor is one who engages to perform service for another according to his own method and manner, free from direction and control of the employer in all matters relating to the performance of the work, except as to the result or the product. The line of separation between the two is the degree of direction and control. In the former direction and control cover both method and manner of doing the work and the result produced; in the latter direction and control are limited to the result and do not apply to the method and manner of the service rendered."

Orchestras of this type known as "name orchestras" or "name bands" originate by some individual who believes that he can create an organization which will be employed for entertainment purposes by dancehall operators, hotels, radio programs and public and private parties.

The leader is highly individualistic, featuring his own name as leader, and his success or failure to a great extent depend upon his musical ability, power to create an outstanding, or, at least, a distinctive or specialized, style and method of rendering

music and his showmanship. He uses every adroit means of advertising available to him and to please his customers. Organization and success mean an expenditure of sums of money for music and accessories, salaries or promise of rewards during the formation of the orchestra, for rehearsals, and the musicians must be suitably and distinctively dressed.

Appearances are usually for one night but there may be repeats. The business is highly competitive. Many fall by the wayside, others attain phenomenal success. Success or failure depends to a great extent upon the leader, although the ability of the individual members should not be decried. The orchestras here in controversy are primarily dance orchestras. When an orchestra has been built up so that a demand is created for its services, the leaders generally employ booking agents to secure appearances in ballrooms or other places seeking their particular form of entertainment.

The evidence establishes that the leaders at all times exercised the entire direction and control over their orchestras and the method and manner of doing the work. They, of course, exercised the right to engage such members of the orchestra and to dispense with their services as they saw fit, to arrange for and pay their wages, to keep all profits and sustain and pay such losses as might occur, pay transportation and incidental expenses and direct and control the orchestra during engagements. None of the musical instruments are furnished by the customer, except the piano, which is part of the equipment of the establishment in which they perform. The leader created and established and had for sale an independent business and the ballroom operator was interested only in the result of the performance.

■ This situation creates and shows that the orchestra leaders were independent contractors and at the time of their engagements the members of the orchestras were employees of such independent contractors. Griff Williams v. United States, 7 Cir., 126 F.2d 129, certiorari denied 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527; Aberdeen Aerie No. 24 v. United States, D.C., 50 F.Supp. 734; In re Ten Eyck Co., Inc., D.C., 41 F.Supp. 375; Longo v. Glenn, D.C.N.D.Ky., November 20, 1943;[1] Biltgen v. Reynolds, D.C.Minn., 58 F.Supp. 909;

Spillson v. Smith, D.C.N.D.Ind.,[1] affirmed 7 Cir., 147 F.2d 727; Los Angeles Athletic Club v. United States, D.C.S.D.Cal., 54 F. Supp. 702.

The Commissioner of Internal Revenue evidently would accept this conclusion were it not for a contract between the parties, known in the record as "Form B", as he has refunded to the plaintiffs in civil action No. 294 all such taxes collected where the contract form ɪɜ was not used.

This form B contract has a history. Sometime ago the American Federation of Musicians had prepared and required all orchestra leaders and their booking agents to use when arranging for engagements a contract providing in general terms that the owners of the establishments or persons engaging their services were employers and the musicians of the orchestras their employees. A trial court found that this position was correct, but on appeal it was held that this contract did not change the relationship from that of an independent contractor to that of employer and employee. See Griff Williams v. United States, 7 Cir., 126 F.2d 129. The finding by the court that under such a contract the orchestra leader was still an independent contractor was accepted by the Commissioner as indicated by the refund above referred to.

While this litigation was in progress the American Federation of Musicians had prepared and sent to each local of the musician's union a suggested contract known as form B, together with a letter from the president of that union stating that it must be used for all engagements after June 1, 1941, and that it had been adopted by the international executive board "for the purpose of protecting our members under the Social Security Laws."

Since that time form B has been used and was so used in each of the engagements here under consideration. It provides, as did the other preceding contracts, that the owners of the amusement establishment were the employers of the leaders and the individual members of the orchestras, but added the provision that it was an employment by the owner for the personal services of the employees as musicians severally, and that "The employer shall at all times have complete control of the services which the employees will render under the specifications of this contract." The con-

---

[1] No opinion for publication.

tract also gave the name of the leader, name and address of the place of engagement, the time, the hours to be worked, and the price agreed upon (which was substantial), and when it was to be paid.

█ It is the contention of the Government and the intervenors that these contracts (form B) are conclusive of an employer-employee relationship. I cannot agree. It may be an element that may be considered by the fact finder if of any assistance in determining what is the true relationship.

The leading case on the subject of the conclusive effect of such contracts is perhaps Griffiths v. Commissioner, 308 U.S. 355, 358, 60 S.Ct. 277, 278, 84 L.Ed. 319, wherein that court said: "Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed * * *. Taxes cannot be escaped 'by anticipatory arrangements and contracts however skilfully devised * *.' " And in Moline Properties v. Commissioner, 319 U.S. 436, 439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, it is said: "In general, in matters relating to the revenue, the corporate form may be disregarded where it is a sham or unreal." And there are authorities holding that, in tax matters, the courts are not interested in the terminology of the contract but that they look to the true situation to see whether there is in fact employer-employee relationship or the relationship of an independent contractor. Willard Sugar Co. v. Gentsch, D.C.N.D.O., 59 F.Supp. 82; Matcovitch v. Anglim, 9 Cir., 134 F.2d 834; McDermott v. Henricksen, D.C., 45 F.Supp. 277. And the same rule applies in numerous workmen compensation and tort cases. Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449; In re Morton, 284 N.Y. 167, 30 N.E.2d 369; Industrial Comm. v. N. W. Mutual Life Ins. Co., 103 Colo. 550, 88 P.2d 560; Jack and Jill, Inc., v. Tone, 126 Conn. 114, 9 A. 2d 497; Sanford v. Goodbridge, Iowa, 13 N.W.2d 40; Glielmi v. Netherland Dairy Co., 254 N.Y. 60, 62, 171 N.E. 906, 907; Nestle's Food Co. v. Industrial Comm., 205 Wis. 467, 237 N.W. 117; Brown v. Industrial Acc. Comm. of Calif., 174 Cal. 457, 163 P. 664. And the Commissioner of Internal Revenue has by regulation long recognized this rule of the common law. Section 402.204 of the Regulation 106.

I am satisfied that what is the true relationship is a fact question, and in considering and determining the question of the true relationship of the parties here the court should take into consideration the fact that the contract was not entered into by fair negotiations between the parties, but upon demand of the musician's union and the requirement that it must be signed or no orchestra could be obtained; that it was required to be executed with the avowed purpose and intent of protecting the leader from taxes as an employer.

█ And the contract should also be appraised in connection with the circumstances that both preceded and followed its execution. Butler Bros. Co. v. N. L. R. B., 7 Cir., 134 F.2d 981, 985.

It is apparent from the evidence that there was no difference in the conduct and control of the orchestra by the leader after June, 1941. The intervenor Mr. Paul Moorhead was asked if he would terminate the services of one of the members of his orchestra at the request of the ballroom owner, and, after hesitating, said that he would ask the member to step down from the rostrum.

Even if this hypothetical situation had occurred, and the evidence does not disclose that it ever did, still it would be no more than Mr. Moorhead would have done before the form B contract was introduced, as he was desirous of pleasing the person employing his services and would go to any extent to defer to any wish of the owner so long as it did not interfere with his actual control over the orchestra. The matters testified to by Mr. Moorhead were inconsequential as to the real question in issue.

The difficulty which appears to bother the Commissioner is the provision of the contract giving to the owner the right of control. It seems to be his thought that as this right of control was given to the ballroom operator by the contract the fact that such control was not exercised by him but continued to be exercised by the leader of the orchestra could not change his right of control which determines the relationship of employer and employee. In other words, he is apparently not able to perceive how this right could be taken away or proven not to exist even though it was not exercised.

█ But why in determining the true relationship, disregard parts of the written contract and not others? One answer is that under the situation here shown such right could not be exercised. If the owner

attempted to exercise any such right of taking charge and control of the orchestra it would destroy the orchestra and the result of a satisfactory entertainment. It just could not be done. The leader in each instance controlled the details and the manner of the performance of the members of the orchestra, and the evidence of actual control is sufficient to warrant a finding of the right of actual control.

■ The purpose of a contract is to express the intention of the parties regarding the subject matter. As between the parties the agreement is generally conclusive as to such intent, but as against a third person the true intent may be shown. It gets us back to the pronouncement of the Supreme Court above referred to in Griffiths v. Com'r, 308 U.S. 355, 358, 60 S.Ct. 277, 278, 84 L.Ed. 319, that "Taxes cannot be escaped 'by anticipatory arrangements and contracts however skilfully devised * *.'"

I therefore make the following findings of fact and conclusions of law:

## Findings of Fact.

1. That at all times, and during the times of the performance by the several orchestras on the premises of the plaintiffs, the leaders of the orchestras exercised entire direction and control, and the right of control, over their orchestras and the members thereof, and the method and manner of doing the work. Such leader exercised and had the exclusive right to hire and fire such members, to contract for and pay their wages, and to keep all profits and sustain and pay such losses as occurred from the performances. Such leader organized, managed and controlled such orchestras as an independent organization for hire, and the true relationship as shown by the evidence was that such leaders were independent contractors and the members of the orchestras their employees within the meaning of the internal revenue statutes.

2. The contract, form B, was not entered into by fair negotiation between the parties, but upon demand of the musician's union and the leaders of the orchestras that it must be entered into or no orchestra could be obtained, and it was required to be so executed with the avowed purpose of protecting the leader from taxes as an employer. It was required by the leader to be entered into as an anticipatory arrangement to escape taxation.

There was no difference in the conduct and control of the orchestras, or the right to so conduct and control such orchestras, subsequent to June, 1941, or by reason of the form B contract, than there was before that time, and the true relationship at all times as between the plaintiffs and such leaders was that the latter were independent contractors.

3. At the time of the execution of the contracts, form B, neither the orchestra leader nor any of the sidemen intended thereby to transfer or give to the ballroom operators control of or the right to control the orchestra or the sidemen, or the method or manner of doing its or their work in any particular. And at the time of the execution of the contracts, form B, the ballroom operators never intended thereby to have transferred to them or to receive or exercise the control of or the right to control the orchestra or any of the sidemen, or the method or manner of doing its or their work in any particular.

4. Considering all the facts and circumstances as disclosed by the evidence, including the contract form B and its execution, none of the plaintiffs was at the time of the performance of the several orchestras on their premises the employer of the leader or of any of the members of the orchestras within the meaning of the internal revenue statutes.

## Conclusions of Law.

1. The court has jurisdiction of the subject matter and of the parties.

2. That at the time of the engagements of the orchestras with the ballroom operators, plaintiffs in these cases, the leader and the members of such orchestras were not the employees of the plaintiffs, within the meaning of the internal revenue acts.

3. That at the time of the engagements of the orchestras with the ballroom operators, plaintiffs in these cases, the leader of such orchestra was an independent contractor and the members of his orchestra were his employees.

4. That the conclusions arrived at by the court herein make it unnecessary to decide other questions raised by the plaintiffs.

5. Plaintiffs are entitled to the relief demanded and for judgment of the amount of the taxes paid with interest.

6. That all of the costs should be taxed against the defendant and the intervenors,

except the costs that were exclusively made in cause No. 328, and such costs should be taxed against the defendant in that case.

The attorneys for the plaintiffs may prepare a judgment entry in each case, setting forth the amount of the judgment and costs, and submit it to the attorneys for the Government in conformity with the local rules of this court.

In each case defendants and intervenors except to each findings of fact and conclusions of law.