**EARLE RESTAURANT, Inc. v. O'MEARA.**

No. 9335.

United States Court of Appeals District of Columbia.

Argued Nov. 20, 1946.

Decided Feb. 24, 1947.

CLARK, Associate Justice, dissenting.

Mr. J. Harry Welch, of Washington, D. C., with whom Messrs. H. Mason Welch and John R. Daily, both of Washington, D. C., were on the brief, for appellant.

Mr. John H. Burnett, of Washington, D. C., with whom Mr. Arthur F. Carroll, Jr., of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellee O'Meara was a musician in an orchestra in the Neptune Room of the Earle Restaurant.. She was injured there and brought a civil action against the Restaurant for negligence. The Restaurant answered that she was its employee and, therefore, limited to her claim under the

Workmen's Compensation Act.[1] The case went to trial before a jury, and a verdict for Miss O'Meara was returned. From judgment on that verdict the Restaurant appeals.

Appellant's first point relates to the exclusion from evidence of an alleged contract. Upon the trial, the Restaurant proffered a document purporting to be a contract of employment between it and Miss O'Meara. The court at first admitted the document over objection, but later granted a motion to strike it, upon the ground that the testimony did not show that Miss O'Meara knew anything about the contract except the fact that there was one. Then, upon authority of Williams v. United States,[2] the court held that as a matter of law Miss O'Meara was an employee of the orchestra leader and not of the Restaurant.

The document in question was a printed form with blanks filled in. It purported to be a contract of employment between the Neptune Room,[3] as employer, and Four Musicians "represented by the undersigned representative." It was signed "By Consolidated Radio Artists, Inc. (Representatives of Employees) By Charles E. Green." It recited that "the employees severally, through their representative, agree to render collectively to the employer services * * *", etc. It also recited that musicians performing under the contract must be members of the American Federation of Musicians, and all rules, laws and regulations of that Federation were made part of the agreement. The contract designated the leader of the orchestra as one of the Four Musicians, but imposed certain duties upon him "on behalf of the employer", and provided for his signature as "Orchestra Leader".

It was testified that Consolidated Radio Artists negotiated the contract; that it was "represented by the Musician's Union"; that the form was one used by the American Federation of Musicians, and that this was the contract entered into by the Earle Restaurant for these musicians. Miss O'Meara explained that union rules provide for some sort of a written agreement, in triplicate, one copy for the union, one for the leader, and one for the "place you are playing in." She said that the band contract would have to be a union contract, that she had previously worked under this form of contract, but that she had not seen or signed this document. Her name, with those of the other musicians, was listed on the back of the contract, and the wages due each were listed.

 On the facts thus shown, the document in question appears to be a contract of employment negotiated and executed by or for a union representing employees.[4] Any contract is binding if executed by a duly-authorized agent, even if the principal did not see or sign it or know anything further about it.[5] This contract appears to be one reached by a collective-bargaining process. To be sure, it is not an ordinary collective-bargaining contract, as that term is used currently to refer to labor union negotiations of general terms of employment, since this contract includes the terms of an actual engagement.[6] But it purports to have been negotiated by a designated representative of a group of employees,

---

[1] Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., made applicable to the District of Columbia by the Act of May 17, 1928, 45 Stat. 600, D.C.Code (1940) § 36—501.

[2] 7 Cir., 1942, 126 F.2d 129; the facts are more fully stated in the lower court's opinion reported in D.C.N.D.Ill., 1941, 38 F.Supp. 536.

[3] "Neptune Room", being the name of a restaurant operated by appellant, was treated throughout the case as a trade name of appellant.

[4] Aside from the fact that Consolidated Radio Artists, Inc., negotiated the contract and executed it as representative of the employees, the record does not show this concern's place or authority in the matter. Apparently it was acting directly for the Musician's Union.

[5] A principal is presumed to know what his agent is doing and may be bound even by his misrepresentations. Bowen v. Mount Vernon Sav. Bank, 1939, 70 App. D.C. 273, 275, 276, 105 F.2d 796, 798, 799; Peyser v. Volsk, 1941, 74 App.D. C. 1, 119 F.2d 462; 2 Mechem, Agency (2d Ed.1914) §§ 1709, 1720.

[6] It was pointed out in J. I. Case Co. v. Labor Board, 1944, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762, that a collective-

and that is the distinguishing characteristic of collective bargaining. We know of no rule which prevents collective bargaining of actual individual employment, or any rule which makes invalid a contract thus negotiated and executed by a duly-authorized bargaining representative. There is no requirement that such a contract be seen or signed by each individual employee. If agreed to and signed by his or her duly-authorized collective-bargaining representative, it is a binding agreement of employment. Thus the document in the case at bar was admissible upon the facts shown. Of course, if it were shown that it is not what it purports to be, or is otherwise invalid or unauthorized, the answer might be to the contrary.

The contract involved in Williams v. United States, supra, differed from what the contract appears to be in the case at bar. There the Music Corporation appeared in the contract as "representing Griff Williams and His Orchestra", called an "attraction" and referred to throughout the contract as an entity; the musicians were not severally named; they did not purportedly "severally agree." It was specifically found by the court that the Music Corporation was a booking agency under agreement with Williams to act as the agent for him and the orchestra of which he was the leader; and that the amount paid by the establishment at which the attraction appeared, was a lump sum from which Williams was entitled to secure a profit after paying his musicians. Those and other facts of similar import led the Circuit Court of Appeals to hold that Williams was an employer. The difference between the facts in that case and those in the case before us is too obvious to require elaboration.

Similarly, in Spillson v. Smith,[7] the orchestra was engaged as a unit, the contract was between the leader and the restaurant, and the sum paid was a lump sum.

The contracts in Aberdeen Aerie No. 24, Etc. v. United States,[8] Los Angeles Athletic Club v. United States,[9] and Biltgen v. Reynolds[10] were similar to those in the Williams and Spillson cases, supra. In Birmingham v. Bartels,[11] however, the contract was similar to the one we have here, and the court reached a conclusion opposite to those in the other cases mentioned and held the restaurant to be the employer. It is important in the present case to note that in every case mentioned the court considered the contract itself an important factor in the consideration. In the case before us, the question is whether the contract should have been admitted. In the view which we take, we do not attempt to weigh all the factors to determine whether the Restaurant was or was not Miss O'Meara's employer. Our decision is that the contract was admissible.

If the contract is as it appears to be on the facts adduced, and as we have characterized it, the puzzling and confused features of the case appearing in the record become at once clear. Such, for example, are the leader's status in the matter, the reference in the contract to the union rules, laws and regulations, the plaintiff's testimony as to the leader's activities, and the fact that she knew there was a contract but had never seen it. We think that the trial court was in error in granting the motion to strike the contract and thus denying it as evidence.

The judgment will be reversed with a direction to grant a new trial. We do not order a dismissal, because, while the contract may dispose of the case, the case was not tried upon the theory of a collective-bargaining contract, and, therefore, there may be evidence, not presented, which might indicate that the document is not what it appears to be or is unauthorized or otherwise invalid.

The trial court also declined to admit entries in the ledger of the Earle Res-

bargaining agreement does not usually go so far as to include actual terms of employment, and additional individual contracts of actual employment are usually necessary.

[7] 7 Cir., 1945, 147 F.2d 727.
[8] D.C.W.D.Wash., 1943, 50 F.Supp. 734.
[9] D.C.S.D.Cal., 1944, 54 F.Supp. 702.
[10] D.C.Minn., 1943, 58 F.Supp. 909.
[11] 8 Cir., 1946, 157 F.2d 295.

taurant, proffered by it "for the purpose of showing the relationship which existed between the parties which is in issue in this suit." Appellant asserts error in that ruling. On the question posed by the proffer we agree with the trial court. These records, properly authenticated, were admissible under the Federal Shop Book Rule to prove specific acts, transactions, occurrences or events;[12] for example, in the present case, certain payments claimed to have been made by the Restaurant. But they are not admissible for the stated purpose of proving a relationship. For that purpose they are merely self-serving declarations. Whether, having proved certain acts by the books, counsel could argue that those acts prove a relationship, is a different matter. The difference may seem technical, but the Federal Shop Book Rule is specific.

■ We find no error in the other respects in which appellant asserts error. The instruction as to the inference of negligence is perhaps inartistic as it appears on the printed record. In effect, however, the court said that the evidence was sufficient to justify an inference of negligence if the jury believed the evidence and determined that the inference was warranted; it specifically said that no presumption of negligence whatever arose from the mere happening of the accident.

Reversed with instructions to grant a new trial.

CLARK, Associate Justice (dissenting).

I cannot, on the record before me, find a legal relationship of agency existing between appellee and the Consolidated Radio Artists which has any legal effect upon the determination of the status of employment between appellee and the restaurant. Neither can I extend the purposes of a collective bargaining contract to an abandonment of legal rights. Such legal rights as may arise from a negligent injury to life or limb are to be determined from the existing facts, not from the declarations of a collective bargaining agency.

The theory advanced by the court was never presented in the trial court, in fact, counsel for appellant there pursued the theory that the contract terms made the leader of the band, Billy Arnold, appellee's representative in entering into the contract. Obviously, this is not true from a reading of the contents, and nowhere in the record is there evidence that outside the terms of the contract there existed the necessary authority in either Billy Arnold or the Union to establish appellee in an employment status with such extended implications as to tort liabilities.

The trial court had before it the contract and the facts. The facts were that the contract between the band and the restaurant was neither seen nor signed by appellee and that she did not know its terms. There is nothing whatever either in this contract or in the general law as to collective bargaining to indicate that without specific knowledge and sanction any one would deliberately permit a collective bargaining agency to wipe out rights to recover for injury to life or limb. During the engagement Arnold had sole and exclusive charge of appellee's musical activities, telling her when to report to work, selecting the music she was to play, and designating the time when she would play. He had hired her for his band and had the exclusive right to discontinue her services. The procedure for paying appellee and the other musicians in the band was for Arnold to receive the total amount of the wages from the restaurant company and in turn distribute the amounts to the members. I think that with these facts before him, the trial court acted correctly in striking the contract from the evidence and holding as a matter of law that appellee was an employee of Billy Arnold, an independent contractor, and not an employee of Earle Restaurant, Inc. The trial court undoubtedly felt, as I do, that the actual conduct of the parties involved governed the determination of their legal relationship, rather than the contract whose provisions appellee did not know and to which she had not subscribed.

---

[12] The Federal Shop Book Rule, 28 U. S.C.A. § 695, specifically provides that the records, etc., of any act, transaction, said act, transaction, occurrence, or etc., shall be admissible "as evidence of event * * *." (Emphasis ours.)

The status of band leaders and band members under union contracts similar to the instant one has been before the courts, both Federal and State, on numerous occasions, involving in the main social security taxes, and to a lesser extent workman's and unemployment compensation. See 158 A. L.R. 915. The Federal Courts, until recently, have been unanimous in holding that band members were employees of the band leader, and not of the concern engaging the band. Williams v. United States, 7 Cir., 126 F.2d 129, certiorari denied 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527; Spillson v. Smith, 7 Cir., 147 F.2d 727; Bartels v. Birmingham, D.C., 59 F.Supp. 84; Biltgen v. Reynolds, D.C., 58 F.Supp. 909; Los Angeles Athletic Club v. United States, D.C., 54 F.Supp. 702; Aberdeen Aerie No. 24, etc. v. United States, D.C., 50 F.Supp. 734. The court below correctly relied on this line of cases, especially the Williams case, in ruling as a matter of law that on the facts before him appellee was not an employee of appellant. Subsequent to the judgment below, the Circuit Court of Appeals for the Eighth Circuit handed down its decision in Birmingham v. Bartels, 157 F.2d 295, reversing Bartels v. Birmingham, supra. Since that case involves a contract identical with the instant one, the court's holding that the band leader and members were employees of the ballroom operators for social-security tax purposes is persuasive, but I cannot say that the reasons for the decision advanced by the court are. As pointed out in an able dissent by Judge Gardner, the court completely brushed aside the findings of the trial court that the contract did not represent the true relationship of the parties and held that because the terms of the contract purportedly fixed the relationship of the parties, that relationship existed.

For the foregoing reasons I cannot agree with the court on the issue of the contract. Since I agree with them that the trial court was correct in all other respects I am of opinion that the judgment below should be affirmed.